**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**M. Murray SCHECHTER, Defendant-
Appellant.**

No. 72-2822.

United States Court of Appeals,
Fifth Circuit.

March 23, 1973.

Rehearing Denied April 20, 1973.

E. David Rosen, Richard M. Gale, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Charles O. Farrar, Asst. U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Jabar, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BELL and THORNBERRY, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

This appeal is to review a judgment of conviction by the court after a non-jury trial on a two count indictment which charged appellant with knowingly and wilfully evading and defeating his income tax for the years 1967 and 1968 in violation of 26 U.S.C. § 7201.[1]

Appellant insists that the evidence was insufficient to sustain the conviction, and that the court erred in two particulars in its rulings upon evidence. Appellee upholds the sufficiency of the evidence, and the correctness of the rulings.

Appellant, a physician, for the year 1967 reported gross receipts of $203,496.00 and taxable income of $165,100.00. For 1968 gross receipts of $213,633.00 and taxable income of $167,162.00. He omitted taxable income for the year 1967 in the amount of $21,958.15 and for 1968 in the amount of $43,910.74. An additional tax liability of $14,054.00 for 1967 and $31,953.00 for 1968 resulted from these omissions of income.

Appellant's secretary kept a daily record showing: (1) "charges," (2) "cash," and (3) "Rec'd on account." All the entries on the daily record book were correctly entered. Generally at the end of the month appellant would personally transpose the totals of each day's business to monthly summary sheets. Discrepancies arose when the totaled figures in the daybooks were transcribed to the summary sheets. These discrepancies were of two types. One type was the transposition of an understated number to the summary sheets occasioned by the omission of the initial digit or some other digit in the number. The other type was "underfooting," or the adding of a column of figures and entering an amount for a total which was less than a true addition of that column of figures.

For the year 1967 there were twenty transposition discrepancies in the amount of $14,813.40 and eleven underfooting discrepancies in the amount of $7,144.76. All of the former and all but one of the latter, amounting to forty cents, were in favor of appellant.

For the year 1968 there were twenty-five transposition discrepancies in the amount of $32,265.94 and ten underfooting discrepancies in the amount of $11,644.80. All but one of the former, amounting to $2.76, and all of the latter were in appellant's favor.

When the time arrived for the preparation of his return appellant took his monthly and annual summaries and his daily record books to an accountant. He would sit next to the accountant and would read the figures from his recap sheets. The accountant would write the figures as they were called out to him on his own recap sheets, occasionally checking to see if they were the same figures as those appearing on appellant's sheets.

The books were made available to the accountant, but he never checked the figures other than totaling the amounts read to him to see if they were the same as the totals on appellant's summary sheets. This procedure was followed from 1957 forward. The accountant was not employed to audit appellant's books.

To counter the evidence as to the discrepancies in the particulars detailed, appellant offered evidence that the adding machine used by him was defective, and that appellant, who reported on a cash basis, made non-taxable errors of a similar nature when he transposed the totals in the daily charge columns to the charge columns on the monthly summary sheets for both years.

The adding machine appears to have been used for only a couple of months after it was found to be out of order

---

[1] Section 7201. *Attempt to evade or defeat tax*

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

and was then exchanged for a new machine.

There were seven discrepancies in the charge column summaries for 1967, fourteen for 1968, and with one day in each year entirely omitted.

The rule is now well established that in considering the sufficiency of the evidence this court does not determine whether it establishes guilt beyond a reasonable doubt, but only whether the evidence would permit the trier of fact to find the defendant guilty beyond a reasonable doubt, Gordon v. United States, 438 F.2d 858, 867 (5 Cir.). The judgment of conviction must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Gordon v. United States, *supra*. A finding of guilty, whether at the hands of court or jury, is not to be overturned unless there is no substantial evidence to support it. Cohen v. United States, 363 F.2d 321, 327 (5 Cir.).

The following facts stand out in the record: the substantial amount of the taxable income omitted; the significant effect of that omission [2]; the number of the discrepancies; the odds against their occurrence in appellant's favor as inadvertent routine errors; appellant's personal assumption of the simple mechanical task of compiling the monthly summaries; the appearance of the discrepancies conjoined with the performance of that task; and his action in personally calling off the totals appearing on the summaries in lieu of leaving them with the accountant for the preparation of his returns.

These facts together with all the other evidence, including the non-taxable discrepancies, which could be construed as a part of a pattern designed to defraud and not as innocent errors, constituted a sufficient basis upon which to rest the court's conviction in keeping with the guidelines spelled out in the decisions above noted.

Appellant asserts a violation of his Fifth Amendment rights against against self-incrimination arising from the court's action in overruling his motion to strike the following question propounded to him: "Did you furnish the summary sheets?" Immediately preceding this question he had been asked if the agent had asked to examine his records for 1964, 1965, 1966. There was no objection and he replied that the agent had asked to examine his 1966 records, but that he did not recall that he asked for his 1964 or 1965 records.

Following a colloquy between court and counsel in the course of which the court observed that the agent had a right to look at his 1966 records, the question was withdrawn and never answered. We find no error or violation of Fifth Amendment rights in any action taken or statement made by the court at that point in the trial.[3]

Likewise, the court did not err in sustaining an objection to a hypthetical question propounded to an expert in accounting concerning good accounting practices in using a client's records, including daybooks, summary sheets, and adding machine tapes, in preparation of an income tax return. The question was irrelevant. The adequacy or quality of the accountant's services was not in issue. Blumberg v. United States, 222 F.2d 496, 499 (5 Cir.). He had never been employed to audit appellant's books to determine the accuracy of the summary sheets. He was hired simply to prepare the tax returns from information supplied to him by appellant.

The judgment of the trial court is

Affirmed.

2. Appellant was in the 58% bracket and would need to gross approximately $120,000.00 in order to net an amount equal to the tax on the amount of income omitted.

3. It will be presumed that the trial judge relied only upon properly admitted and relevant evidence. United States v. Dillon, 436 F.2d 1093 (5 Cir.).