**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Juan CANTU, Michael Neil Emigh, and
David Edward Michaud, Defendants-
Appellants.**

**No. 73–2963.**

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1974.

Morris L. Pepper, Houston, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GOLDBERG, Circuit Judges, and LYNNE, District Judge.

WISDOM, Circuit Judge:

The defendants-appellants, Juan Cantu, Michael Neil Emigh, and David Edward Michaud, appeal from their convictions of possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). All three contend that the search during which the marijuana was seized violated their rights under the Fourth Amendment. We conclude, however, that the search was valid under the pre-*Almeida-Sanchez* "border search" doctrine.[1] Appellants Emigh and Michaud contend that the evidence was insufficient to support a conclusion that they were ever in possession of the

marijuana, and that the district court erred in giving one of his instructions and in refusing to give another requested by the defendants.

We affirm Cantu's conviction and reverse the convictions of Michaud and Emigh.

I.

On the morning of December 22, 1972, the Border Patrol was operating a mobile Border Patrol Traffic Checkpoint on Highway 281, seventy to seventy-five miles north of the Mexican border and two miles south of Falfurrias, Texas, one of the three locations used alternately to reduce the risk that illegally entering aliens will skirt the checkpoint.[2] There was a stop sign there to halt all northbound motorists. At three that morning, the defendants stopped their car at the checkpoint. When the window of the car was rolled down, a Border Patrol agent detected what he recognized as a "strong" marijuana odor. When the agent shined his flashlight into the back seat area of the car, he saw marijuana debris on the floor and saw that the back seat was out of place, about four inches above the floorboard. In the crack between seat and floorboard the agent saw several white packages. The agent asked the driver to pull to the side of the road. The driver complied, and the occupants got out of the car. The agent called out a partner who informed the three defendants of their *Miranda* rights.

The two agents proceeded to search the car. One lifted up the back seat and found eight bricks of marijuana wrapped in white freezer paper. The other asked the driver to open the trunk, and in the trunk found three suitcases. The agent found three bricks of marijuana, and a plastic bag containing some loose marijuana. It was later . deter-

1. Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, In United States v. Miller, en banc, 5 Cir., 1974, 492 F.2d 37, this Court held that *Almeida-Sanchez* should not be applied retroactively.

2. No roads leading from the border intersect Highway 281 north of the checkpoint. But State Highway 755, a secondary road leading from the border, intersects Highway 281 about 18 miles south of the checkpoint.

mined that thirty pounds of marijuana had been seized. The border patrol officials called customs agents.

The customs agents came and took custody of the marijuana and the defendants. The customs officials gave the defendants another warning of their rights and took the defendants to the Falfurrias station, where they asked the defendants to give personal history statements. The defendants Emigh and Michaud answered all questions on the personal history statement, but refused to make any further statement concerning the marijuana found in the trunk. Defendant Cantu told his interrogator that he was driving a rental car from Las Vegas to Austin, and intended to return in another rental car from Austin to Las Vegas, and that in the course of this trip he had purchased the marijuana found in the car for $1400 in La Villa, Texas.

## II.

The appellants' argument on the search question is devoted entirely to an argument that this search was not valid under the "border search" doctrine. We conclude, to the contrary, that the stop and search were constitutionally permissible.

■ The agents were acting within the scope of their statutory authority. 8 U.S.C. § 1357; 8 C.F.R. § 287.1. Furthermore, they operated the checkpoint at a location reasonably situated to minimize the risk that it would be evaded. Seventy miles is not too great a distance from the border by Texas standards; searches at such distances have been approved by this Court. See, e. g., United States v. Merla, 5 Cir. 1974, 493 F.2d 910; United States v. Miller, 5 Cir. 1974, 492 F.2d 37; United States v. Thompson, 5 Cir. 1973, 475 F.2d 1359. Nearer the border, intersecting roads

would have made the checkpoint ineffective.

Border Patrol agents operated the checkpoint as the functional equivalent of a permanent station, although the location was varied slightly from time to time to make evasion more difficult. A stop sign was erected to halt all northbound traffic, and agents ran every passing vehicle through a routine immigration check. They were on duty between midnight and eight in the morning, hours when the roads are less travelled and the risk of intrusion in the lives of innocent citizens is minimized, and the challenged search took place at three in the morning. We conclude that the stop was lawful on the authority of United States v. Merla, 5 Cir. 1974, 493 F.2d 910; United States v. Miller, 5 Cir. 1974, 492 F.2d 37; United States v. Daly, 5 Cir. 1974, 493 F.2d 395.[3]

■ Once Immigration agents had lawfully stopped the car pursuant to a valid border search, they were empowered to search the car for aliens. United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041; Ramirez v. United States, 5 Cir. 1959, 263 F.2d 385. Moreover, once the validity of the stop is conceded, the search was lawful without further reference to the "border search" doctrine.

■ As soon as the officers' investigatory stop was made, they had probable cause to believe that there was contraband in the car. One of the border patrol agents smelled marijuana when the driver rolled down the window; he saw marijuana debris on the back seat floorboard; he saw the back seat abnormally elevated four inches resting on white blocks which he could justifiably have believed were marijuana bricks. Given the existence of probable cause, it is

3. See also United States v. McDaniel, 5 Cir. 1972, 463 F.2d 129, cert. denied, 1973, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041; United States v. De Leon, 5 Cir. 1972, 462 F.2d 170; Ramirez v. United States, 5 Cir. 1959, 263 F.2d 385; Haerr v. United States, 5 Cir. 1957, 240 F.2d 533. But see United States v. Diemler, 5 Cir. 1974, 498 F.2d 1070; United States v. Byrd, 5 Cir. 1974, 494 F.2d 1284; United States v. Storm, 5 Cir. 1973, 480 F.2d 701; Marsh v. United States, 5 Cir. 1965, 344 F.2d 317.

equally clear that "exigent circumstances" existed to justify the officers' failure to obtain a search warrant, for the officers were preparing to search a movable vehicle on the open road. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

### III.

The appellants Emigh and Michaud contend that the evidence was insufficient to support their convictions, because nothing in the evidence tended to show that the two of them were in possession of the marijuana. In this case, the only evidence tending to show that Michaud and Emigh had any connection with the marijuana was the fact that they were found in the automobile at the time the marijuana was found. There was, on the other hand, far more substantial evidence tending to tie the defendant Cantu with the marijuana. The customs agent testified that Cantu had told him that he had purchased the marijuana at La Villa, Texas, for $1400; and that Cantu had indicated that he intended to take the marijuana back with him to Las Vegas.

■ To reverse a criminal conviction for insufficiency of the evidence, we must find that there was no evidence on the basis of which the jury could have excluded beyond a reasonable doubt every reasonable hypothesis but that of guilt. *E. g.*, Vick v. United States, 5 Cir. 1954, 216 F.2d 228.

In Guevara v. United States, 5 Cir. 1957, 242 F.2d 745, the police had arrested the defendant and a passenger in his car for reasons unrelated to drugs. They found a package of marijuana cigarettes on the floor of the car beneath the front seat during a search of the car at the police station. The police, believing that Guevara had simply been carrying his passenger home, released the passenger. Guevara was convicted of illegal possession. This Court reversed. We held:

> The cigarettes were in such position in the car that they could easily have been placed in the unlocked vehicle by any person. Under the circumstances here proved, there is no rational connection between ownership and possession of the automobile and possession of the cigarettes. For all that the present evidence shows, it is just as reasonable to believe that the cigarettes belonged to the passenger as to the appellant. A jury must not be left to speculate and surmise in a criminal case, merely hoping that they are drawing the proper inference.

242 F.2d at 747. In effect, the Court held that the hypothesis that the cigarettes were the passenger's was a reasonable one, and that there was no evidence upon which the jury could have excluded it beyond a reasonable doubt.

In United States v. Duke, 5 Cir. 1970, 423 F.2d 387, we reached a similar result. In that case, three men, the owner of the car (Liles), and two friends of his (Duke and Sanchez) were found in a car in which a cigarette package containing over $2,000 worth of heroin was found. Duke and Liles were indicted; Sanchez died before the indictment was handed down, and thus was named in the indictment as an unindicted principal. The defendants and Sanchez were found in Del Rio, Texas, and had been visiting there and in Ciudad Acuna, Mexico, for several days prior to their arrest. They had travelled there from Washington State, where Sanchez and Liles lived. The jury convicted Liles and Duke, and this Court reversed. The Court characterized the position of the Government in this manner:

> The government insists that the close friendship among the men, the long and strenuous trip which they had taken, the apparently frivolous justification for such a long trip, their constant association while in Del Rio, and the very considerable cost of the heroin . . . all combined to justify

an inference by the jury that this was a joint venture to obtain heroin.

423 F.2d at 391. The Court rejected this position:

In this case, however, after a careful study, we conclude that all of the admissible evidence which the jury was free to consider under the court's instructions was not sufficient to convince a reasonable juryman beyond a reasonable doubt that either or both of the defendants had knowing possession of the heroin. We find nothing from which a reasonable jury could fairly hold the evidence inconsistent with the hypothesis that Sanchez possessed the heroin and that its presence was not known to Liles and Duke.

423 F.2d at 392.

■ This case is governed by *Guevara* and *Duke*. In this case, there was insufficient evidence because there was no evidence upon which the jury could have excluded the hypothesis that Cantu and Cantu alone exercised the "dominion and control" over the marijuana that is requisite to a finding of possession. Indeed, this case is stronger than either *Duke* or *Guevara*, for in this case there was direct evidence tending to establish the very hypothesis it is held could not have been reasonably excluded. In this case, Cantu made no statement implicating the defendants Michaud and Emigh or connecting them to the marijuana. There was no evidence that they were close friends with Cantu. There was, in sum, no evidence upon which the jury could have excluded the hypothesis that Cantu was the sole possessor of the marijuana.

Our disposition of this issue makes it unnecessary for us to consider the propriety of those aspects of the trial court's charge to which Emigh and Michaud object.

The conviction of the defendant-appellant Cantu is affirmed. The convictions of the defendants-appellants Emigh and Michaud are reversed.