**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William BRIGHT, Defendant-Appellant.**

**No. 76–1967.**

United States Court of Appeals,
Fifth Circuit.

April 7, 1977.

Denis Dean, Miami, Fla. (Court-appointed), for Bright.

Robert W. Rust, U.S. Atty., Michael P. Sullivan, John Steven Berk, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before MORGAN and FAY, Circuit Judges, and HUNTER *, District Judge.

FAY, Circuit Judge:

Defendant William Bright was indicted along with twelve others for conspiring to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963. At the joint trial with two other co-defendants, the jury returned a verdict of guilty against all the defendants. This defendant was placed on three years probation. Two issues are raised here, the most important of which is whether the evidence was sufficient to warrant conviction. We agree with the defendant Bright that the evidence was insufficient to support the verdict, and, therefore, reverse.

The evidence presented at trial showed conclusively that a conspiracy to import marijuana did exist. The government established in detail the planning and actual importation of a large amount of marijuana from Colombia. At issue, however, is whether there was sufficient evidence presented to link this defendant to that conspiracy. The factual settings presented at trial are as follows:

1. The government's main witness, Ronald Bennett, testified that he met the defendant in February of 1974 while purchasing an airplane. Subsequently, in July of 1974, Bennett brought the plane back to Ft. Lauderdale, Florida to see if the defendant could sell or lease the plane for him. Thereafter, a number of phone calls were exchanged between the defendant and Bennett concerning the sale of the plane.

2. Bennett testified that on September 27, 1974 he had a phone conversation with the defendant at which time Bright told him that he had someone he wanted Bennett to meet. Bennett immediately traveled to Ft. Lauderdale, and was picked up by the defendant at the airport and taken to a motel. A few days later Bright told Bennett that the man he wanted Bennett to meet was in town and that he wanted to talk with Bennett *about the plane.* A man named Bob Godbold then came to Bennett's motel, introduced himself, and told Bennett that he wanted Bennett to fly some marijuana into the country. Godbold then gave Bennett $3500.00 to refurbish and equip his plane. *The defendant was not present at this meeting.* On October 7, 1974, Godbold called Bennett and told him the trip was cancelled. Godbold demanded that his $3500.00 be returned. Bennett agreed to return what was left of the $3500.00 to Godbold. This money was sent to Godbold by way of the defendant.

3. On November 1, 1974, the defendant again called Bennett and informed him that Godbold "had made another connection" and that Godbold wanted him back in Florida. On Bennett's arrival, the defendant told Bennett that Godbold would be in touch with him.

4. Bennett testified that the defendant was not supposed to receive any money directly from Jerry Carroll (the alleged "ringleader" of the conspiracy) for this operation, but that he was supposed to get $10,000.00 for his help in having mechanical work done and fuel tanks installed.

5. On February 2, 1975, six days after government officers had thwarted the conspiracy, the defendant sold Bennett's plane for him at a $5000.00 profit. The defendant received a $1,000.00 commission for this sale.

The essential elements of a criminal conspiracy are an agreement among the conspirators to commit an offense against the United States attended by an overt act of one of them in furtherance of the agreement. *United States v. Issacs,* 516 F.2d 409 (5th Cir. 1975); *United States v. Reynolds,* 511 F.2d 603 (5th Cir. 1975). While no direct evidence or formal agreement is necessary to establish a conspiracy, *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41

---

* Senior District Judge for the Western District of Louisiana, sitting by designation.

L.Ed.2d 590 (1974), there must be proof beyond a reasonable doubt that a conspiracy existed, *that the accused knew it,* and with that knowledge intentionally joined that conspiracy. *United States v. Barrera,* 547 F.2d 1250, No. 76–1451 (5th Cir. 1977); *Causey v. United States,* 352 F.2d 203 (5th Cir. 1965).

The legal tests to apply in determining whether the acts are sufficient to sustain a verdict have recently been set forth by this Court. *United States v. Barrera,* 547 F.2d 1250, No. 76–1451 (5th Cir. 1977). In a criminal case, the government must prove every element of the offense beyond a reasonable doubt. In this respect, circumstantial evidence is intrinsically no different from direct evidence, *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), and the same test for judging the sufficiency of the evidence should apply whether the evidence is direct or circumstantial. *United States v. Gomez-Rojas,* 507 F.2d 1213 (5th Cir. 1975); *United States v. Warner,* 441 F.2d 821 (5th Cir. 1971). In testing the sufficiency of the evidence in this case, it was the duty of the trial judge, before sending the case to the jury, to determine whether a reasonably minded jury must necessarily entertain a reasonable doubt about the evidence. *United States v. Haggins,* 545 F.2d 1009 (5th Cir. 1977). While *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), requires us to examine the evidence in the light most favorable to the government, it does not compel judicial abdication to the findings of the trier of fact. *United States v. Peterson,* 488 F.2d 645 (5th Cir. 1974).

In the present case there is not sufficient evidence in the record to prove beyond a reasonable doubt that William Bright had actual knowledge of the conspiracy. The defendant was an airplane broker. He had an existing business relationship with the government's chief witness when he called Bennett and told him to travel to Ft. Lauderdale. Bennett himself testified that the defendant told him that the purpose of the trip was to meet a man who wished to talk with Bennett about a sale of the plane. The defendant was not present at any of the meetings when the importation of the marijuana was discussed. The fact that Bennett returned some money to Godbold by mailing it to the defendant is also not evidence of any knowledge this defendant had of the conspiracy. Bennett explained on direct examination that the only reason he returned the money in this manner was because he did not know how to get in touch with Godbold.

The strongest evidence against the defendant was his second phone call to Bennett, and the testimony of Bennett that the defendant was to receive $10,000.00 for his help in fixing the plane. While the jury could have inferred from the phone call the defendant's knowledge of the conspiracy, an alternative (and innocent) explanation of the content of the call is just as plausible. When the defendant stated, "Bob has made another connection", he could have just as easily been saying that Bob Godbold was seeking financing to buy the plane himself, or was simply aiding Bennett in finding a buyer for it. The knowledge of the defendant at the time of the call, and not the intent of Bob Godbold at that time, is the crucial issue. We are not convinced that this conversation alone, or taken in conjunction with the other evidence, could establish defendant's knowledge of the conspiracy beyond a reasonable doubt. The same is true about the testimony of Bennett that the defendant was to receive $10,000.00 for his help in having mechanical work done and fuel tanks installed on the plane. The government failed to show either that this work done by the defendant was not in the ordinary course of business of an airplane broker, or that the payment he was supposed to receive was an inordinate amount for the services he rendered. Equally important, of course, is the failure to show either that the defendant received this money or ever had knowledge that he was going to be paid. All the acts of the defendant which were brought out at trial, therefore, can be given an innocent interpretation. While it is true that acts in themselves not unlawful

will lose that character when they become constituent elements of a criminal conspiracy, this will not be the case unless the government first proves that the accused had knowledge of the criminal conspiracy.

We feel that not even slight evidence was adduced at trial to warrant the inference that the defendant knew of the conspiracy, much less the inference that he knowingly and intentionally participated in it. In considering the sufficiency of the evidence, this Court does not determine whether it establishes guilt beyond a reasonable doubt, but only whether the evidence would permit the trier of fact to find the defendant guilty beyond a reasonable doubt. *United States v. Schechter,* 475 F.2d 1099 (5th Cir. 1973). In this case there was not sufficient evidence to warrant the trier of fact to find the defendant Bright guilty beyond a reasonable doubt. Consequently, the defendant's conviction is reversed and the case remanded for dismissal. It is unnecessary, therefore, to consider the merits of the other points the defendant raises on appeal.