# UNITED STATES of America, Plaintiff-Appellee,

v.

## Conrado Gillie CARRILLO and Ernest Pete Montoya, Defendants-Appellants.

### No. 77–5019.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1978.

Rehearing and Rehearing En Banc Denied Feb. 13, 1978.

Lucien B. Campbell, Federal Public Defender, C. Larry Mathews, Jr., Asst. Federal Public Defender, El Paso, Tex., for Carrillo.

Roddy L. Harrison, Pecos, Tex. (Court-Appointed), for Montoya.

Jamie C. Boyd, U. S. Atty., LeRoy M. Jahn, Ronald P. Guyer, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

Conrado Gillie Carrillo and Ernest Pete Montoya were found guilty by a jury and convicted for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and for importation of that heroin into the United States from the Republic of Mexico in violation of 21 U.S.C. § 952(a).

Both defendants challenge the sufficiency of the evidence to support their convictions. In addition Montoya claims reversible error in the trial court's failure to grant a mistrial because of allegedly prejudicial testimony elicited by the prosecutor from a government witness. We affirm.

## I FACTS

On June 28, 1976, defendants, who were traveling from Ojinoga, Mexico, entered the United States through the port of entry at Presidio, Texas. Montoya was driving a 1976 Oldsmobile Cutlass. Carrillo occupied the front passenger's seat. The vehicle stopped at the Customs Office and the occupants were questioned by Customs Officer Short concerning their citizenship and whether they had anything to declare. Defendants replied that they were U. S. citizens and had liquor that they were bringing in from Mexico.

While questioning defendants the officer noticed that Carrillo was extremely nervous. He fidgeted in his seat, fluttered his eyelids, and moved his hands rapidly. As a result of these observations Officer Short ordered the vehicle into the area for secondary inspection. There defendants stated that they had traveled to Ojinoga to visit a relative. During Officer Short's inspection of the car, Carrillo, who continued his nervous behavior, requested that he be allowed to take the liquor to the liquor control authorities to pay the state tax. Officer Short noticed that when Carrillo left the inspection area his nervousness diminished.

The inspection of the vehicle revealed some electrician's tape in the glove compartment. In light of this discovery and Carrillo's nervous behavior, the officer took the defendants to the Customs Office for a search of their persons. The search revealed a .25 caliber pistol hidden in Carrillo's right boot and a clip with .25 caliber shells in Montoya's front left pocket. This clip fit the pistol found on Carrillo. Each defendant had track marks on both arms which appeared to be recent.

Following this search of defendants' persons, Officer Short conducted a more thorough search of their car. Beneath the front console of the car, between the driver's and passenger's seat, the officer located a packet wrapped in black electrician's tape which was found to contain heroin. At this time the officer placed both men under arrest. Defendants denied any knowledge of the heroin's presence, although Carrillo was so nervous that his denial was almost unintelligible.

Officer Short then returned to the vehicle and investigated the right side of the console on the passenger's side and discovered a much larger packet of heroin, wrapped like the first in electrician's tape. During the completion of the search Montoya asked the officer, "Who told you it was there?" The officer replied that no one told him it was there; that he had just found it. Montoya continued, "Somebody told you it was there. Who was it?"

The automobile used by the defendants was found to have been rented by one Clarence Ramiro on June 26, 1976, in Albuquerque, New Mexico. Mr. Ramiro was acquainted with both appellants; with Montoya since 1969 and with Carrillo, whose sister he dated, for about the same length of time. Shortly after he rented the car, Ramiro left it at Montoya's apartment and gave him the keys. Ramiro had a date with Carrillo's sister Irene and had gone to Montoya's apartment to leave her baby there. No

permission was granted to take the car to Mexico.

It was later determined that the large packet contained one hundred two and one-half grams or less than four ounces of 56% pure heroin, while the small packet held two tenths of a gram of 54% pure heroin.

## II SUFFICIENCY OF THE EVIDENCE

■ Defendants' primary contention is that because of the insufficiency of the evidence against them the district court erred in denying their motions for judgments of acquittal. Viewing the evidence in the light most favorable to the government, the verdict of a jury must be sustained if there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). This court has held that the standard to be applied in determining the sufficiency of the evidence is as follows:

> On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.
>
> \* \* \* \* \* \*
>
> The same test . . . should apply whether the evidence is direct or circumstantial.
>
> [W]e must accept as established all reasonable inferences that tend to support the action of the jury, and any conflicts in the evidence must be resolved in favor of the jury verdict.

*United States v. Warner*, 441 F.2d 821, 825, 831 (5th Cir. 1971); *quoted in United States v. Parr*, 516 F.2d 458, 463–64 (5th Cir. 1975). More recently this court has held that the standard to be applied by a trial judge in testing the sufficiency of the evidence for submission to the jury is "whether a reasonably minded jury must necessarily entertain a reasonable doubt about the evidence." *United States v. Bright*, 550 F.2d 240, 242 (5th Cir. 1977), *citing United States v. Haggins*, 545 F.2d 1009, 1013 (5th Cir. 1977).

■ Applying these standards to the instant case we find that the trial court did not err in denying defendants' motions for judgment of acquittal. Taking the case against each defendant in turn, it is clear that the evidence adduced against Montoya was more than sufficient to support his conviction. Montoya was the driver of a vehicle in which a large quantity of heroin was found. He obtained that vehicle in Albuquerque, New Mexico, from the person who had rented it and used it to enter Mexico and return to the port of entry at Presidio, Texas, where the heroin was subsequently discovered. Both of his arms had puncture marks on them. Most damaging of all to Montoya's case was his question to the officer as to who told him about the presence of the heroin in the car, mentioned earlier.

The evidence against Carrillo, while somewhat less compelling than that adduced against Montoya, is nevertheless sufficient to support his conviction. Carrillo was traveling from Mexico into the United States with Montoya in an automobile containing a large quantity of heroin. The largest packet of heroin was found beneath the console on the passenger side. When stopped at the port of entry for routine questioning Carrillo became extremely nervous. This nervousness appeared to the Customs officer to decrease as Carrillo's distance from the automobile and the officer increased. Carrillo asserts that his nervousness was caused by the unloaded pistol in his boot. However, at the time Carrillo displayed such nervousness the car and not he was being searched. In fact the agent allowed him to take his liquor to the liquor control officials and pay the tax.

Carrillo asserts that he was merely a passenger in the car and that there was no evidence showing that he had known Montoya for any significant period of time prior to their arrest. However, both Montoya and Carrillo lived in Albuquerque, New Mexico. Both men had been acquainted for at least six years with Clarence Ramiro, the man from whom Montoya obtained the car in which they were riding. Ramiro dated Carrillo's sister Irene, and the night Ramiro left the rental car at Montoya's apartment he had gone to the apartment to leave

Irene's baby there while he and Irene went out on a date. There was also testimony by the Customs officer that appellants had told him they had gone to Ojinoga, Mexico, to visit a relative. In addition, Montoya had in his possession a loaded bullet clip which fit the pistol in Carrillo's possession. Finally, Carrillo, like Montoya, had puncture marks on both arms, suggesting that he used heroin. The combined weight of these facts is such that a jury could reasonably draw the inference that Carrillo had traveled from Albuquerque, New Mexico, to Ojinoga, Mexico, with Montoya for the purpose of importing heroin into the United States for distribution.

On the basis of the evidence presented in this case we hold that a reasonably minded jury could have found beyond a reasonable doubt that the appellants engaged jointly in the importation of heroin from Mexico with the intent to distribute. *See United States v. Riggins*, 563 F.2d 1264 (5th Cir. 1977); *United States v. Parr*, 516 F.2d 458, 464 (5th Cir. 1975); *United States v. Schechter*, 475 F.2d 1099, 1101 (5th Cir. 1973).

### III  DENIAL OF MONTOYA'S MOTION FOR A MISTRIAL

Montoya also asserts that the trial court erred in refusing to grant his motion for a mistrial. The motion was based on a statement elicited by the prosecutor from Mr. Ramiro. The prosecutor asked Mr. Ramiro whether he knew if Mr. Montoya was an addict. Ramiro replied, "Yes, I know." Then, over defense counsel's objection Ramiro stated that prior to 1971 he knew Montoya was an addict but at the present he had no such knowledge. The trial court subsequently struck this evidence and instructed the jury that it was not to be considered for any purpose whatsoever.

This court has held as a general rule that "evidence withdrawn from the jury with a direction by the court that it is to be disregarded may not be the basis of reversible error." *United States v. Smith*, 517 F.2d 710, 711 (5th Cir. 1975). Only where the remark is so highly prejudicial that it is incurable by the trial court's admonition is the instruction considered insufficient. *United States v. Klein*, 546 F.2d

1259, 1263 (5th Cir. 1977). Here, Ramiro's testimony was not prejudicial to an incurable degree. Ramiro testified only that he knew that Montoya was an addict before 1971 but had no knowledge of any addiction subsequent to that date, or for approximately five years. In addition, the evidence against Montoya was overwhelming. He was the driver of the car in which the heroin was found. He had obtained the car in Albuquerque and driven it to Mexico and had asked the Customs agent who told the agent the heroin was in the car. In light of this evidence of Montoya's guilt any error involving Ramiro's testimony must be considered harmless. *United States v. Bloom*, 538 F.2d 704, 710 (5th Cir. 1976); *Driver v. United States*, 441 F.2d 276 (5th Cir. 1971). "A defendant is entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 605 (1952).

Judgment AFFIRMED.

WISDOM, Circuit Judge, dissenting:

In *United States v. Almendarez*, 5 Cir. 1976, 534 F.2d 648, 649–50, we found that a driver of an automobile may be considered as having constructive possession of whatever illegal substance the vehicle contains. *See United States v. Riggins*, 5 Cir. 1977, 563 F.2d 1264. Today, the majority extends that rule to a nervous passenger who was with the driver-bailee of an automobile. I agree with the Court on the affirmance of the conviction of the driver-bailee, Montoya. I cannot agree, however, that the evidence of guilt of the passenger, Carrillo, is sufficient to sustain the judgment; I would reverse his conviction.

The majority, fairly and accurately, summarizes the evidence against Carrillo. The record shows that (1) Carrillo was in close proximity to the heroin; (2) he was nervous at the time of the search; (3) he was a user of heroin; (4) he had more than a passing acquaintance with Montoya, the driver of the car in which he was a passenger. Even if the jury believed all four allegations it could not reasonably conclude that the evidence was "inconsistent with the hypothesis

of the accused's innocence". *United States v. Warner*, 5 Cir. 1971, 441 F.2d 821, 825. *See United States v. Cantu*, 5 Cir. 1974, 504 F.2d 387, 390; *Montoya v. United States*, 5 Cir. 1968, 402 F.2d 847, 850.

In this circuit, "mere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession". *United States v. Stephenson*, 5 Cir. 1973, 474 F.2d 1353, 1355. *Accord, United States v. Ferg*, 5 Cir. 1974, 504 F.2d 914, 917; *United States v. Gloria*, 5 Cir., 494 F.2d 477, 483. "The line between knowing possession and guilt by association can be very thin." *United States v. Phillips*, 5 Cir. 1974, 496 F.2d 1395, 1397.

The majority emphasizes Carrillo's nervousness. In the circumstances this case presents, nervousness may be consistent with a state of mind unrelated to importation and possession of heroin. Here, Carrillo had a pistol in his boot at the time he and Montoya crossed the border. One may reasonably infer that he was concerned about the pistol's being discovered, not with the heroin he was supposedly importing. Carrillo's nervousness decreased as he removed himself from the area where his person would be searched. His nervousness is as consistent with fear of having the pistol found as it is with the majority's theory that he was nervous about the heroin cache. *See United States v. Duckett*, 5 Cir. 1977, 550 F.2d 1027, 1030.

To be guilty of illegal possession of an object, one must not only know of the location or presence of the object, one must also have dominion and control over the object. *See, e. g., Williams v. United States*, 9 Cir. 1969, 418 F.2d 159, 162, *aff'd*, 1971, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388; *United States v. Martin*, 5 Cir. 1973, 483 F.2d 974, 975 (per curiam). It is possible that Carrillo knew that the heroin was in the car, but that the heroin was Montoya's. *See Amaya v. United States*, 10 Cir. 1967, 373 F.2d 197, 199, in which the court held that "Mere knowledge of [the narcotic's] physical location did not constitute possession". Any person would be nervous if he knew that his companion was attempting to bring narcot-

ics into the country. As far as the record goes, it is plausible that Carrillo went along for the ride.

In this Court nervousness combined with proximity to illegal conduct is not sufficient evidence to convict the defendant of the illegal conduct. In *Vick v. United States*, 5 Cir. 1954, 216 F.2d 228, the defendant was found 10 or 15 feet away from an illegal still. He fled. Although his brother and his nephew were found guilty of working at an illegal still, we reversed his conviction because there was a hypothesis consistent with his innocence: he could have been hunting. We found that his flight could have occurred because of nervousness; "he thought that his presence at the distillery was a suspicious circumstance which might lead to his indictment". *Id.* at 233. Like flight, nervousness should be considered "weak evidence of guilt". *Id.* We have held that flight taken in connection with proximity is insufficient to prove possession of narcotics. *United States v. Lopez-Ortiz*, 5 Cir. 1974, 492 F.2d 109, 115.

Even if Carrillo's nervousness is probative, there is no evidence to show that he had dominion and control of the heroin other than his proximity to the drug. In *United States v. Cantu*, 5 Cir. 1974, 504 F.2d 387, we reversed the convictions of passengers in an automobile for possession of drugs even though they had to know of the presence of marijuana in the vehicle. A "strong" odor of marijuana emanated from the automobile, its back seat floor was strewn with marijuana debris, and white packages containing the drug were visible. We reversed; the driver admitted buying the drug at one point (a story he later retracted) and there was "no evidence upon which the jury could have excluded the hypothesis that Cantu [the driver] and Cantu alone exercised the 'dominion and control' over the marijuana that is requisite to a finding of possession". *Id.* at 391. In this case, Montoya's demand to know who told the Customs Agents of the presence of the drug indicates that it belonged to him. There is no evidence to dispel the inference that it was his alone.

The majority opinion relies in part on the location of the bulk of the heroin under the console on the passenger side of the car. But we have held that the location of an illegal substance inside an automobile near one occupant or another is not a circumstance that "has any real weight". *United States v. Duke,* 5 Cir. 1970, 423 F.2d 387, 392. In most vehicles more space is available on the passenger's side than on the driver's side. A passenger, however, has no more control over cavities in the vehicle that are close to him (such as the glove compartment) than over those that are more remote. Dragging in this factor as probative illustrates the weakness of the government's case.

The Court of Appeals for the Second Circuit faced a similar situation in *United States v. Johnson,* 2 Cir. 1975, 513 F.2d 819. There, it was the passenger-defendant's nervousness that alerted Customs Agents who stopped the car in which he was riding. The defendant had been a close friend of the driver for many years. The illegal drug was secreted in the slot for housing the passenger's window. The court reversed the conviction of the passenger, even though it was shown that his exculpatory statement at the time of his arrest was a fabrication. The court found that the Government had failed to prove the passenger's participation in the crime of importation of cocaine. *Id.* at 823.

The jury could have believed that needle tracks on Carrillo's arm meant that he was a user of heroin. This factor is entitled to little weight. The question is who controlled the heroin. In *United States v. Harold,* 5 Cir. 1976, 531 F.2d 704, 705, we reversed the conviction on a distribution charge of an addict who knew that a package in the car in which he was a passenger contained heroin. In *United States v. Martin,* 5 Cir. 1973, 483 F.2d 974 (per curiam), we held that prior use of mescaline by a defendant was "no evidence that [she] actually possessed the mescaline" in question. *Id.* at 975.

In short, reasonable minds could conclude that Carrillo did not have dominion and control over the heroin in the car in which he rode. *See United States v. Warner,* 5

Cir. 1971, 441 F.2d 821, 830. I respectfully dissent as to Carrillo's conviction.