**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ballard DANIELS, Defendant-Appellant.**

**No. 79–5424.**

United States Court of Appeals, Fifth Circuit.

May 16, 1980.

William V. Linne, Pensacola, Fla., for defendant-appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief/App. Sec., Robert E. Lindsay, Kurt F. Zimmermann, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JONES, GEE, and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

After graduating from high school and working at various jobs in the wholesale snack food distribution business, Ballard Daniels built a successful snack food distributorship, selling primarily Frito-Lay products to retail stores on a cost-plus basis. The company, Daniels Sales Company, was owned and operated by Daniels as a sole proprietorship. In the early years of his business, Daniels kept the company's records without the aid of a bookkeeper. In 1965 or 1966, however, he was advised by the state Workman's Compensation Department to employ a bookkeeper in order to better maintain the company's records. Accordingly, Daniels hired the Benjamin Totten Accounting Office to keep his books and to prepare his tax returns.

In December 1974, the Internal Revenue Service began an audit of Daniels' 1973 tax return. The IRS noticed that Daniels was spending large amounts of cash. When examination of the source and application of his funds as reported in his 1973 tax return could not be reconciled with the amount of cash spent by Daniels in that year, the IRS expanded its audit to include Daniels' tax liability for 1972 and 1974, as well as 1973. The same discrepancy between reported income and cash outlay appeared for the additional tax years, and the inquiry into Daniels' taxes was referred to the Criminal Investigation Division of the IRS. Daniels was indicted by a grand jury on March 13, 1978, and charged under 26 U.S.C. § 7201 (1974) with three counts of willful and knowing income tax evasion by filing false and fraudulent tax returns for the years 1972–74. Tried by a jury, he was convicted of each count. Daniels now appeals his conviction, contending that the evidence was insufficient to prove that he acted willfully in understating his income and tax liability and that in any event he was entitled to a new trial because the prosecutor made what Daniels claims were improper and highly prejudicial comments in his closing arguments.

Daniels has not disputed that he understated his taxable income and concomitant tax liability for 1972–74 in the amounts asserted by the government.[1] Rather, he claims that his tax evasion was not willful because in filing his returns he relied upon the accounting system organized by his bookkeeper to establish correctly his net income and was too ignorant of accounting practices to realize that the accounting system was inadequate to reflect his true business earnings. The bookkeeping system required Daniels to report his total sales and costs to the Benjamin Totten Accounting Office. By agreement between Totten and Daniels, sales were determined by figures recorded in the company's "load-out sheets," which registered the products loaded into trucks at the company warehouse for delivery to retail stores. Costs were determined by the price of goods stated in the Frito-Lay delivery invoices. When the accounting system was instituted, the net cost of goods sold was accurately expressed in the delivery invoice statements. However, within a few years, Frito-Lay began giving Daniels a rebate on his cost of the products. Frito-Lay also began providing Daniels with bonuses and promotional funds. Although the rebates decreased Daniels' gross costs and thus made the delivery invoice figures inaccurate representations of his net costs, he processed the rebates through a "clearing account"[2] sepa-

---

1. Daniels paid taxes of $6,442 on reported income of $25,026 for 1972, $4,249 on reported income of $16,046 for 1973, and $5,843 on reported income of $21,910 for 1974. In fact, he owed taxes of $18,997 on taxable income of $62,905, $18,950 on taxable income of $52,310, and $33,409 on taxable income of $76,168 for the years 1972, 1973, and 1974, respectively.

2. Daniels established the separate "clearing account" with his accountant's knowledge. The account was intended to accommodate Frito-Lay's practice of accepting charge slips from retail customers as payment from its wholesale distributor, Daniels, in order to avoid duplication when tabulating Daniels' income. Daniels would deliver products to a retail outlet. The

rate from the company's "business account" and did not report them to his accountant. Similarly, Daniels processed the bonuses and promotional grants through the clearing account and failed to report these items as income to his bookkeeper. The figures derived from the accounting procedures further understated Daniels' income because the "load-out" figures did not correspond to the company's total sales, since some sales transactions were made directly at the warehouse and were not recorded for delivery.

■■■ To sustain Daniels' conviction under 26 U.S.C. § 7201 (1974) for the felony of willful tax evasion, the government must have established beyond a reasonable doubt that Daniels acted willfully and knowingly with specific intent to evade his income tax obligation.[3] Such willfulness is demonstrated by proof of conscious, deliberate, purposeful acts, rather than negligent, unconscious, or mistaken conduct in failing to pay taxes owed. *See Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954) (construing "willfulness" requirement of § 145 of the Revenue Act of 1936, 26 U.S.C. § 145(b) (1939), which contained provisions similar to 26 U.S.C. § 7201 (1974)); *Spies v. United States*, 317 U.S. 492, 497–500, 63 S.Ct. 364, 367–368, 87 L.Ed. 418 (1943) (construing 26 U.S.C. § 145(b) (1939)); *United States v. Garber*, 607 F.2d 92, 97 (5th Cir. 1979) (en banc); *United States v. Schafer*, 580 F.2d 774, 777 (5th Cir. 1978); *United States v. Burrell*, 505 F.2d

904, 911 (5th Cir. 1974); *United States v. Slutsky*, 487 F.2d 832, 844 (2d Cir. 1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); *United States v. Tunnell*, 481 F.2d 129, 152 (5th Cir. 1973). The requisite showing of willfulness may be based upon circumstantial evidence. *Spies v. United States, supra*, 317 U.S. at 499, 63 S.Ct. at 368; *United States v. Schafer, supra* at 781 & n.8; *United States v. Brown*, 548 F.2d 1194, 1199 & n.14 (5th Cir. 1977). Thus,

> Affirmative willful attempt [to defeat and evade taxes] may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

*Spies v. United States, supra* at 499, 63 S.Ct. at 368. Willfulness may also be proved by

> Affirmative acts of evasion such as concealment of financial transactions and the providing of false or incomplete information in an attempt to hamper the investigation . . . . *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Stone*, 431 F.2d 1286 (5th Cir. 1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971); *Windisch v. United States*, 295

retail grocer would then give him a charge slip for the wholesale cost of the items delivered. Daniels would not collect this money from the retailer. Instead, he would send the slips to Frito-Lay as part of the payment of the amount he owed for the goods he had purchased. Frito-Lay would credit Daniels for the amount indicated by the charge slips and would collect the money directly from the retailers. When the amount Frito-Lay collected from the retailers exceeded the cost of the articles purchased by Daniels for a given period, Frito-Lay would send Daniels a check for the difference. This money, rather than the amount indicated by the charge slips, was the income considered by the accountant. Daniels' accountant testified that when the "clearing account" was established, Daniels did *not* receive rebates, bonuses, or promotional funds from Frito-Lay. Daniels

never informed his accountant of these additional sources of income, and hence the accountant remained unaware that the "clearing account" had come to involve these income-producing transactions.

3. The other elements of the § 7201 offense that the government must prove are the existence of a tax deficiency and an affirmative act constituting evasion or attempted evasion of the tax due. *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *United States v. Garber*, 607 F.2d 92, 94 (5th Cir. 1979) (en banc); *United States v. Callahan*, 588 F.2d 1078 (5th Cir. 1979); *United States v. Buckley*, 586 F.2d 498, 503 (5th Cir. 1978). As noted *supra* at p. 2, proof of these elements is not at issue in the present appeal.

F.2d 531 (5th Cir. 1961); *McGrew v. United States*, 222 F.2d 458 (5th Cir. 1955). A consistent pattern of understatement has been held to present a jury question as to willfulness, *United States v. Tunnell*, 481 F.2d 149 (5th Cir. 1973); *Holland v. United States, supra*, as had the failure to report a very substantial amount of income, *United States v. Schechter*, 475 F.2d 1099 (5th Cir. 1973); *Wardlaw v. United States*, 203 F.2d 884 (5th Cir. 1953). . . .

*United States v. Burrell, supra* at 911, *quoted in United States v. Schafer, supra* at 781 n.8, *and United States v. Brown, supra* at 1199 n.14. Proof of "repetitious conduct [is] admissible for the limited purpose of showing the intent of the appellant where, otherwise it might be claimed that the acts in the tax years were either inadvertent or innocent." *Id.* (citations omitted).

██ Viewing the evidence presented at trial in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and making "all reasonable inferences and credibility choices . . . in favor of the jury," *United States v. Prout*, 526 F.2d 380, 384 (5th Cir. 1976); *see United States v. Black*, 497 F.2d 1039, 1041 (5th Cir. 1974); *Gordon v. United States*, 438 F.2d 858, 867 (5th Cir. 1971), we conclude that "a reasonably minded jury could determine that the evidence was adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Davis*, 592 F.2d 1325, 1328 (5th Cir. 1979). *See Glasser v. United States, supra*, 315 U.S. at 62, 62 S.Ct. at 461. The government introduced evidence that Daniels understated his taxable income and tax liability substantially for the years in question. The magnitude of his error in reporting only $25,026 in taxable income for 1972, $16,046 for 1973, and $21,910 for 1974, when admittedly he had earned $62,905, $52,901, and $76,168, respectively, for those years itself tends to support a finding of willfulness. *See, e. g., Holland v. United States*, 348 U.S. at 139, 75 S.Ct. at 137 (while willfulness "cannot be inferred from the mere understatement of income . .

evidence of a consistent pattern of [understating] *large* amounts of income, and of the failure on petitioners' part to include all of their income in their books and records . . . could . . . [support] an inference of willfulness."); *United States v. Schechter*, 475 F.2d at 1101; *United States v. Tunnell*, 481 F.2d at 152. The consistency of the taxpayer's practice of understating his income may also establish the essential inference of willful intent. *United States v. Holland*, 348 U.S. at 139, 75 S.Ct. at 147; *United States v. Rischard*, 471 F.2d 105, 107 (5th Cir. 1973).

It is also telling that Daniels understated his sales for the taxable years in question by failing to reveal to his accountant or to report to the government sales he made directly from the warehouse. Indeed, the bookkeeping system was dependent upon Daniels' submitting the correct figures for monthly sales and purchases to his bookkeeper, and the major portion of his understatement of taxable income appears to stem from the omission of the warehouse sales from his figures summarizing total sales, which were based on load-out. This error does not involve the accounting system's failure to include clearing account transactions but rather can be attributed solely to false input by Daniels. By submitting to his accountant summary sheets substantially understating his sales rather than providing the original records of all sales transactions, Daniels withheld material information from his own bookkeepers. Such conduct has often been recognized as probative of an intent to evade and defeat tax liability. *See, e. g., Spies v. United States*, 317 U.S. at 499, 63 S.Ct. at 368; *United States v. Slutsky*, 487 F.2d at 844; *United States v. Scher*, 476 F.2d 319, 322–24 (7th Cir. 1973); *United States v. Frank*, 437 F.2d 452, 453 (9th Cir.), *cert. denied*, 402 U.S. 974, 91 S.Ct. 1661, 29 L.Ed.2d 139 (1971).

Most significantly, the evidence established that Daniels, an experienced and successful businessman, kept records in which he computed the net cost of all goods sold through both load-out and truck delivery and through direct warehouse sales. The

net cost figures, which Daniels regularly submitted to Frito-Lay with his payment for the products supplied by that company, correctly stated his actual cost by factoring Frito-Lay's rebates, bonuses, and promotional funds into the amount owed for goods purchased. Thus, Daniels in effect maintained a double set of records and submitted only the one containing inaccurately high cost figures and incorrectly low sales figures to his accountants for tax purposes. This behavior, which refutes Daniels' claim that he knew nothing of accounting procedures, is particularly persuasive evidence of the taxpayer's willful intent to evade his tax liability. *See, e. g., Spies v. United States*, 317 U.S. at 499, 63 S.Ct. 368; *United States v. Slutsky*, 487 F.2d at 844.

Finally, there is evidence that the defendant was spending large amounts of cash during the tax years here in question that could not be reconciled with the amount of income he reported in his tax returns. This conduct, too, supports a reasonable inference that Daniels was aware of the extent of his earnings and knowingly and willfully sought to evade taxes by falsely understating his taxable income. We therefore cannot overturn Daniels' conviction for insufficient evidence.

■ We also find meritless Daniels' contention that he is entitled to a new trial because the prosecutor made improper and highly prejudicial remarks. Defense counsel had asserted in his closing argument to the jury that Daniels had cooperated with the government and that his cooperation was proof that he had not willfully violated the tax laws. In his closing statement, the prosecutor noted that Daniels had not been fully cooperative with the government during the IRS investigation and had in fact resisted disclosure of certain documents un-

til forced to relinquish them by a summons proceeding.[4] Upon defendant's objection, the judge directed the jury to disregard the prosecutor's comments and excluded Exhibit No. 39 from the jury's consideration.

The prosecutor's remarks were not improper, although they were not precisely accurate. It was not technically true that it had been necessary for the government to obtain a court order compelling the *defendant* to release his records. The contested documents had been in the possession of Daniels' accountant, who had refused to give them to the IRS. The legal proceedings for their production, to which the prosecutor referred, had been directed against the bookkeeper, not Daniels. However, the prosecutor's statement was substantially correct in characterizing the defendant as uncooperative and the legal proceeding as compelling disclosure of his records, for Daniels had intervened in the legal proceeding against his accountant in order to prevent enforcement of the IRS summons.

The prosecutor's remarks were permissible means of factually rebutting the defendant's attempt to create the impression before the jury that he had cooperated with the IRS when in fact he had not fully done so. They were fair comments. The defendant had opened the door to comment on the issue of his cooperation, and the prosecutor's statement fell within the doctrine of fair reply. *See Doyle v. Ohio*, 426 U.S. 610, 619–20 & n.11, 96 S.Ct. 2240, 2245 & n.11, 49 L.Ed.2d 91 (1976) ("Post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version on arrest . . . to challenge the defendant's testimony as to his behavior following arrest."); *United States v. Alston*, 609 F.2d 531 (5th Cir. 1980) (cross examination of accused concerning

---

4. The contested government statement was as follows:

Now, there were some other points brought up in the defense's closing that I feel compelled to speak to. There's been references made to willingness to pay for four years, for four years he's been completely open about it. Well, this is not the case. That is the evidence, and counsel knows the evidence

can refute it. It's Exhibit No. 39, which is the record of a summons enforcement proceeding. You see, the records that the IRS needed for its audit were not voluntarily provided. The defendant refused to turn them over. It was necessary to go into court and compel him to turn over the records that he was obliged to do so.

his post-arrest silence is not improper where accused had given testimony on direct that was intended to create the impression that he had cooperated fully in an investigation of the crime); *United States v. Dixon*, 593 F.2d 626, 630 (5th Cir. 1979); *United States v. Houde*, 596 F.2d 696, 703–04 (5th Cir. 1979); *United States v. Hiett*, 581 F.2d 1199, 1204 (5th Cir. 1978). The prosecutor's closing argument, therefore, does not provide grounds for reversal.

AFFIRMED.