UNITED STATES of America,
Plaintiff-Appellee,

v.

Becaficio Saenz DeLEON,
Defendant-Appellant.

No. 80–1095.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 2, 1981.

Pat Maloney, San Antonio, Tex., for defendant-appellant.

J. A. Canales, U.S. Atty., John M. Potter, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

Becaficio Saenz DeLeon appeals his conviction for conspiracy to possess cocaine with intent to distribute it, 21 U.S.C. § 846 and § 841(a)(1), and for possession of cocaine with intent to distribute it, 21 U.S.C. § 841(a)(1), on several grounds. Finding the evidence sufficient to support DeLeon's conviction of both the single conspiracy charged in count one of the indictment as well as the substantive offense, and concluding that DeLeon's remaining contentions are without merit, we affirm.

## I. Facts

In April, 1979, DeLeon met in a Dallas motel room with alleged co-conspirators Robert Earl Smith and Ramon Medina-Martinez. Shortly after the meeting convened, DeLeon left the room and returned in a few minutes with approximately 211 grams of cocaine wrapped in plastic bags. In a discussion with Martinez in DeLeon's presence, Smith agreed to take a sample of the cocaine and to try to find a buyer. Smith and DeLeon snorted some of the cocaine at that meeting. The next day the three men gathered in the same motel room and Smith announced that he had been unsuccessful in finding a buyer. In DeLeon's presence, Martinez told Smith that he was in a bind and needed the cocaine unloaded. He lowered the asking price and promised a three-way split of the profits among Martinez, Smith and DeLeon. Then Martinez asked Smith to hold the cocaine because he and DeLeon were returning to Laredo. Two weeks later the three men met at the same Dallas motel and Smith reported that he had been unable to sell the cocaine. Again Martinez asked Smith to hold the 211 grams of cocaine.

On the morning of May 11, 1979, Martinez called Smith and told him that Martinez was flying into the Dallas airport that day. Smith met Martinez at the Dallas airport with $45,000 in cash, which Smith testified Martinez had asked him to remove from a car parked at a friend's house, and the cocaine that he had been holding. Smith's wife remained in the driver's seat of his car parked outside the airport while Smith and Martinez reentered the terminal. They left the cocaine wrapped in a black plastic bag bound with rubber bands on the floor of the front seat. Narcotics agents arrested Martinez and Smith in the terminal. When an agent approached Mrs. Smith in the car outside the airport, she left the automobile, exposing the black plastic bag on the floor of the front seat. The agent seized and opened the bag, the contents of which were later identified as approximately 211 grams of cocaine. Smith testified that this was the same cocaine he had been asked to sell at the Dallas meetings.

The next day, May 12, 1979, narcotics agents undertook surveillance of the Laredo home of Martinez' mother. Agents watched DeLeon and Morquecho, another alleged co-conspirator, leave the house and enter a pickup truck. Morquecho carried an orange paper bag from the house and into the cab of the truck. With Morquecho driving, the truck traveled for twenty-eight blocks at a speed of twenty miles per hour. The agents following the truck observed Morquecho and DeLeon talking to each other and looking back at the agents in the car following them.

Suddenly the truck accelerated rapidly to forty-five miles per hour and began a circuitous route. The agents pursued the truck, losing eye contact with the vehicle only one time for a few moments during which the truck traveled a distance of about one block. After the agents flashed their car's headlights and honked its horn, the driver of the pickup pulled over and stopped. The truck was immediately searched, but the

* District Judge of the Western District of Texas, sitting by designation.

orange bag was not found. In the bed of the truck the agents found a set of scales on which there were traces of a white crystalline substance, later identified as cocaine. They subsequently found an orange bag in some bushes on the passenger side of the street on the route traveled by the pickup. The agents did not see the orange bag being thrown from the cab of the truck. It was found along that part of the route where the agents lost sight of the vehicle. The orange bag contained 294 grams of cocaine.

DeLeon was indicted on three counts of a seven count indictment brought against Martinez, Smith, Morquecho and DeLeon. The court granted a motion for judgment of acquittal in favor of DeLeon on one of the three counts. DeLeon now contests his conviction on counts one and five. Count one of the indictment charged a conspiracy to distribute cocaine involving the four defendants and culminating on May 12, 1979, the day after Smith and Martinez were arrested in Dallas and the day on which the Laredo chase occurred. The overt acts named in count one included the events at the Dallas airport and the incident in Laredo the next day. Count five of the indictment charged DeLeon with the substantive possession offense as a result of the events in Laredo leading to the recovery of the cocaine found in the orange paper bag. DeLeon challenges his conviction on counts one and five, alleging insufficiency in the evidence as to both counts; prejudicial variance between the indictment for one extended Dallas-Laredo conspiracy and the proof at trial, which DeLeon claims established multiple, separate conspiracies; improper joinder of offenses; improper venue in the Laredo district court and erroneous admission into evidence of the contents of the black plastic bag, which DeLeon claims was seized in violation of his fourth amendment rights. We deal with each of DeLeon's contentions separately.

## II. Sufficiency of the Evidence

DeLeon moved for judgment of acquittal based on insufficiency of the evidence at the close of the government's case. The defense closed subject to a renewal of its motion and, after the close of the evidence, defense counsel twice reminded the court of its motion and reurged the motion to the trial judge. Subsequently the evidence was reopened to allow a short stipulation to be read to the jury. DeLeon did not renew his motion after the evidence was closed the second time.

■ DeLeon's failure to renew his motion for judgment of acquittal again at the second closing of the evidence did not effect a waiver of the motion, *United States v. Frick*, 588 F.2d 531 (5th Cir.), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 385 (1979), resulting in the application of the "manifest miscarriage of justice" standard to a review of the sufficiency of the evidence in this case. *United States v. Bourg*, 598 F.2d 445 (5th Cir. 1979); *United States v. Dawson*, 576 F.2d 656 (5th Cir. 1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979); *United States v. Juarez*, 566 F.2d 511 (5th Cir. 1978). Considering the repeated efforts by DeLeon to renew his motion for judgment of acquittal, we conclude that DeLeon preserved his motion and that we may properly apply the more stringent standard to our review of the evidence. That standard requires us to determine whether, viewing the evidence most favorably to the government, reasonable minds could conclude that the evidence is inconsistent with any reasonable hypothesis of the accused's innocence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942).

DeLeon contends that the evidence was insufficient to support his conviction for the single conspiracy alleged in count one of the indictment. He claims that the evidence did not establish a single, continuing agreement to distribute cocaine encompassing both the cocaine seized at the Dallas airport as well as that found in Laredo.

" 'Whether a scheme is one conspiracy or several is primarily a question for the jury.' *United States v. Michel*, 588 F.2d 986, 995 (5th Cir. 1979), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979); *United States v. Rodriguez*, 509 F.2d 1342, 1348

(5th Cir. 1975). 'A single plan does not become many plans simply because some members were cast in roles more vital that others, or because certain members performed only a single function.' *United States v. Bates*, 600 F.2d 505, 509 (5th Cir. 1979)...." *United States v. Ochoa*, 609 F.2d 198, 201 (5th Cir. 1980). Personnel changes do not defeat a finding of a single conspiracy, *United States v. Ochoa*, 609 F.2d at 201; *United States v. Bates*, 600 F.2d at 509, and overlapping membership in various activities may reflect a single continuing plan or scheme, *United States v. Ochoa*, 609 F.2d at 201; *United States v. Michel*, 588 F.2d at 995.

■ From the evidence presented in this case, we think the jury could have reasonably inferred that the scope of the scheme to distribute cocaine went beyond the plan to sell the 211 grams seized at the Dallas airport. The events in Dallas and those in Laredo were closely related in time and geography.[1] The Laredo truck chase occurred only one day after the Dallas episode. There was evidence that Martinez and DeLeon traveled back to Laredo after attending the Dallas conspiratorial meetings. Martinez registered at the Dallas motel using the Laredo address of his mother's home. The jury may have inferred that Martinez flew from Laredo to the Dallas airport on the day of his arrest. Thus, some connexity between Laredo and Dallas was established. The removal of the cocaine from the home of Martinez' mother in Laredo the day after the arrest of Martinez in Dallas allows the inference that, having heard of Martinez' arrest, DeLeon and Morquecho removed the cocaine to prevent its seizure by the authorities. Thus, DeLeon's actions in Laredo could be viewed as evidence that the Dallas episode was merely a part of a continuing scheme to distribute cocaine, some of which was secreted in Laredo. Although Smith's testimony provided direct evidence of the conspiratorial agreement to distribute the 211 grams of cocaine seized in Dallas, the evidence we have reviewed was sufficient for the jury to infer that the Dallas pact was merely one part of a single scheme. *United States v. DeLucca*, 630 F.2d 294, 300 (5th Cir. 1980).

■ The arrest of Martinez and Smith in Dallas on May 11 did not necessarily put an end to the conspiracy. *See United States v. Smith*, 600 F.2d 149, 153 (8th Cir. 1979); *United States v. Papia*, 560 F.2d 827, 835 (7th Cir. 1977) ("It is clear that a co-conspirator's arrest does not in itself terminate a conspiracy as a matter of law, for the conspirators may remain fully capable of carrying out their purpose, notwithstanding the arrest of one of their cohorts...."); *United States v. Grubb*, 527 F.2d 1107, 1109 (4th Cir. 1975). DeLeon's participation in the Dallas meetings and his presence during the Laredo chase incident, as well as the fact that the cocaine was removed from the Laredo home of Martinez' mother the day after Martinez' arrest in Dallas, evidence an overlapping membership in, or connection with, the various activities that reflects a single conspiracy. *United States v. Ochoa*, 609 F.2d at 201; *United States v. Michel*, 588 F.2d at 995.

■ The fact that Morquecho was not present at the Dallas meetings but was involved in the Laredo chase incident does not defeat the single conspiracy theory. Personnel changes do not preclude a finding of a single conspiracy. *United States v. Ochoa*, 609 F.2d at 201; *United States v. Bates*, 600 F.2d at 509. It is not necessary for all co-conspirators to know each other or to work together on every transaction. *United States v. James*, 576 F.2d 1121, 1126 (5th Cir. 1978); 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

■ The trial court charged the jury on the single conspiracy count instructing them that "proof of several separate conspiracies, if that's what you find, is not proof of the single overall conspiracy that is charged in count one of the indictment unless one of those several conspiracies that

---

1. Because the 423 miles between Dallas and Laredo can be traveled by air in an hour and a half, the two cities are, in effect, not geographically remote.

you find is the same conspiracy that the indictment charges."[2] Although this part of the charge might have been more complete and more readily comprehensible, the charge, when viewed as a whole, was sufficient.[3]

DeLeon also challenges the sufficiency of the evidence to support his conviction of the substantive offense charged in count five of the indictment, possession of cocaine with intent to distribute it. We conclude that, while the evidence was not overwhelming, it was sufficient.

█ Because the large amount of cocaine found in the orange paper bag seized in Laredo would permit an inference of intent to distribute, *United States v. Goldstein*, 635 F.2d 356 (5th Cir. 1981); *United States v. Grayson*, 625 F.2d 66 (5th Cir. 1980), DeLeon's conviction must stand or fall on the sufficiency of proof of DeLeon's possession of the orange paper bag. Proof of illegal possession of the cocaine turns on whether DeLeon had dominion and control over the proscribed drugs. *United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir. 1974), *cert. denied*, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). Possession need not amount to physical dominion; constructive possession may satisfy the possession element of the offense. "Constructive possession is the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." *United States v. Marx*, 635 F.2d 436, 440 (5th Cir. 1981). Constructive possession need not be exclusive; it may be shared with others. *United States v. Ocanas*, 628 F.2d 353, 361 (5th Cir. 1980); *United States v. Ferg*, 504 F.2d 914, 916 (5th Cir. 1974); *United States v. Maspero*, 496 F.2d 1354, 1359 (5th Cir. 1974). Neither proof of physical proximity to the proscribed drugs, nor mere association with one who does control the drugs, is sufficient to establish either actual or constructive possession. *United States v. Ferg*, 504 F.2d at 917.

█ Morquecho carried the orange bag from the house into the truck and drove the truck during the Laredo chase. DeLeon portrays his role as that of a mere passenger in the truck during the Laredo incident. Nevertheless, there was evidence from which the jury might have inferred that DeLeon's possession of the bag, either constructive or actual, had been established.

DeLeon's prior relationship with Martinez, his participation in the Dallas meetings and his presence at the home of Martinez' mother in Laredo on the day after Martinez' arrest could all have been considered in favor of a finding of the requisite possession. *See United States v. Carrillo*, 565 F.2d 1323, 1325 (5th Cir.), *cert. denied sub nom.*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). His demeanor during the agents' pursuit of the pickup could justify an inference that he shared control of the bag containing the proscribed substance. *See United States v. Carrillo*, 565 F.2d at 1325 (nervousness during search of

2. The charge continued:
   What you have to determine is whether the conspiracy that is charged in the indictment did in fact exist between two or more conspirators. If you find that no such conspiracy existed, then you must acquit the defendants as to that charge. . . . If you find that a particular defendant is a member of another conspiracy, but it's not the one charged in the indictment, then you must acquit that defendant.
   In other words, to find the defendant guilty, you must find that he was a member of the conspiracy that is charged in count one of the indictment and not some other separate conspiracy.

3. DeLeon did not object to the multiple conspiracy charge given by the trial judge. Pursuant to Fed.R.Crim.P. 30, DeLeon may not now contest the insufficiency of the charge on appeal absent plain error, Fed.R.Crim.P. 52(b). *United States v. Gerald*, 624 F.2d 1291, 1300 (5th Cir. 1980) ("The plain error rule must not be used to eliminate rule 30."); *United States v. Brown*, 616 F.2d 844, 846 (5th Cir. 1980). *See* 2 C. Wright, Federal Practice and Procedure: Criminal § 484, at 290–91 (1969). Finding no plain error in the trial court's jury charges, we pretermit discussion of DeLeon's contention that the multiple conspiracy charge was rendered ambiguous and prejudicial by the court's further instruction that the possession offense, the substantive offense charged in count five, was the object of the conspiracy charged in count one. The charge when viewed as a whole, was correct.

automobile containing heroin evidenced possession). The jury might infer that it was DeLeon who tossed the bag from the window of the truck to the side of the road. Possession may be proved by circumstantial evidence. *United States v. Riggins*, 563 F.2d 1264, 1266 (5th Cir. 1977), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978). No one of these, perhaps, would have sufficed, and his presence at Martinez' mother's home might have been innocent. The jury was not, however, required to weigh each circumstance in isolation. Taken together, in law, unlike plane geometry, the whole may be greater than the mere sum of the parts. The combined weight of these facts taken as a whole is such that a jury could reasonably draw the inference that DeLeon possessed the 294 grams of cocaine seized in Laredo. The verdict is supported by the evidence and we will not disturb it.

### III. Variance Between Indictment and Proof

DeLeon also complains that a prejudicial variance exists between the indictment for a single conspiracy and the proof at trial of two separate conspiracies. Having already determined that the evidence was sufficient to support the jury's finding of a single, continuing conspiracy, we also conclude that there was no variance between the indictment and the evidence presented to the jury.

"The principal factors that this court examines when resolving the issue of a prejudicial variance are the existence of a common goal, the nature of the scheme, and an overlapping of participants in the various dealings." *United States v. Tilton*, 610 F.2d 302, 307 (5th Cir. 1980). Reviewing the evidence, we think these factors point to the existence of a single conspiracy as alleged in the indictment.

■ Even if a variance exists between the proof at trial and the indictment, such a variance will not constitute reversible error unless it affects the substantial rights of the accused. *United States v. Tilton*, 610 F.2d at 307; *United States v. Baldarrama*, 566 F.2d 560, 565 (5th Cir.), *cert. denied sub nom.*, 437 U.S. 906, 98 S.Ct. 3094, 57 L.Ed.2d 1136, *cert. denied*, 439 U.S. 844, 99 S.Ct. 140,

58 L.Ed.2d 145 (1978); *United States v. Perez*, 489 F.2d 51, 57 (5th Cir. 1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). *See United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980) (variance between indictment and proof is fatal only when it affects substantial rights of defendant by failing sufficiently to notify him of the charges against him so that he may prepare a proper defense). We find no prejudice due to the alleged variance in this case.

### IV. Venue

■ Because a conspiracy may be "committed" in a number of places, particularly when it is pursued by overt acts in different locations, allowing the prosecution to choose among the relevant forums is permissible under the sixth amendment, *United States v. Cooper*, 606 F.2d 96, 97 (5th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980), which, along with Article III, § 2, cl. 3 of the federal constitution and Fed.R.Crim.P. 18, guarantees the right of the criminal defendant to be tried in the district in which the crime was committed. *United States v. White*, 611 F.2d 531, 534 (5th Cir.), *cert. denied*, 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980). The drug conspiracy statute pursuant to which DeLeon was prosecuted, 21 U.S.C. § 846, permits the government to bring the conspiracy charges in any district where an overt act is alleged to have been committed. *United States v. Cooper*, 606 F.2d at 97. The government need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense, *United States v. White*, 611 F.2d at 534, or, in the case of drug conspiracies under 21 U.S.C. § 846, that the trial is in the same district where an overt act was committed.

■ Our determination that a single Dallas-Laredo conspiracy was evidenced by the facts of this case resolves DeLeon's contention that venue was improperly laid in the Laredo district. Obviously, the removal of the cocaine from the home of Martinez' mother in Laredo was an overt act in furtherance of the conspiracy permitting the government to prosecute this case in the Laredo District.

### V. Improper Joinder of Offenses

█ DeLeon also contends that the conspiracy count of the indictment, count one, was improperly joined with the substantive offense[4] alleged in count five, thus violating Fed.R.Crim.P. 8 and 14. However, DeLeon waived any claim of misjoinder by failing to move the trial court to sever counts one and five. *See United States v. Quinones,* 516 F.2d 1309, 1312 (1st Cir.), *cert. denied,* 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975). *See generally,* 1 C. Wright, Federal Practice and Procedure: Criminal § 145, at 337 & n.9 (1969).

█ In any event, the claim of misjoinder is not supportable in light of our affirmance of the jury determination that a single Dallas-Laredo conspiracy existed in this case. Joinder of a conspiracy count and a substantive count arising out of that conspiracy is permitted under Fed.R. Crim.P. 8(b) because the claim of conspiracy provides a common link and demonstrates that the offenses grow out of the same acts or transactions for purposes of the federal rule. *See Gordon v. United States,* 438 F.2d 858, 878 (5th Cir.), *cert. denied sub nom.,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971); *United States v. Valenzuela,* 596 F.2d 824, 829 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. Somers,* 496 F.2d 723, 729–30 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). *See also* 1 C. Wright, Federal Practice and Procedure: Criminal § 144, at 322 & n.58 (1969); 1 L. Orfield, Criminal Procedure Under the Federal Rules § 8:20, at 769 (1966). Thus, DeLeon's claim of misjoinder is without merit.

### VI. Admission of Evidence

█ Finally, DeLeon claims that the contents of the black plastic bag seized at the Dallas airport were improperly admitted into evidence because the bag was searched and the contents seized in violation of DeLeon's fourth amendment rights. DeLeon's failure to object to the admissibility of the evidence at trial precludes him from now asserting the issue on appeal. The admission of the black bag's contents was certainly not plain error if, indeed, it was error at all.

█ DeLeon was not present at the time the bag was seized and searched at the Dallas airport. The bag was taken out of Smith's car which Smith and Martinez had just left to enter the Dallas airport. Under these circumstances, DeLeon had no legitimate expectation of privacy in the black bag. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). DeLeon may not assert an expectation of privacy in the security of a bag in the possession of his agents and co-conspirators. A person has no right to assert the inadmissibility of the fruits of an illegal search unless the challenged conduct invades his own legitimate expectation of privacy. *United States v. Payner,* ── U.S. ──, ──, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468, 474 (1980). "Fourth Amendment rights are personal rights that may not be asserted vicariously...." *Rakas v. Illinois,* 439 U.S. at 133, 99 S.Ct. at 425, 58 L.Ed.2d at 394. *See United States v. Hodges,* 606 F.2d 520, 523 (5th Cir. 1979) *cert. denied,* 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980).

Having found the evidence sufficient to support DeLeon's conviction on both the conspiracy and the possession counts and having determined that his remaining contentions lack merit, the judgment is AFFIRMED.

---

4. DeLeon and Morquecho, who were indicted and tried together, successfully urged the court to sever their trial from that of Martinez, who was charged in the same indictment with DeLeon and Morquecho but was tried separately. The propriety of joinder in cases where multiple defendants are involved is tested by Fed.R. Crim.P. 8(b). 1 C. Wright, Federal Practice and Procedure: Criminal § 144, at 318 (1969). Thus, joinder of offenses committed by two or more defendants is controlled exclusively by subsection (b) of Rule 8, governing joinder of defendants, and subsection (a), governing joinder of offenses against a single defendant, has no application. 8 Moore's Federal Practice ¶ 8.05[1], at 8–17 (2d ed. 1968).