UNITED STATES of America,
Plaintiff-Appellee,

v.

Marvin Whitfield GLASGOW, III, and
Larry Gene Salares,
Defendants-Appellants.

No. 79–5316.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 13, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Peter F. K. Baraban, Miami, Fla., A. Raymond Randolph, Jr., Washington, D. C., for Glasgow.

Jesse O. Farr, Rodney C. Strong, Chattanooga, Tenn., Richard A. Kaplan, Washington, D. C., for Salares.

Nicholas P. Geeker, U. S. Atty., Thomas R. Santurri, Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant Marvin W. Glasgow, Jr., was convicted by a jury of conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C. § 846; possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1); and possession of cocaine in violation of 21 U.S.C. § 844. Appellant Larry Gene Salares was convicted by the jury of conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C. § 846.[1] In this consolidated appeal, both appellants challenge the trial court's denial of their motions to suppress. Appellant Glasgow contends that the evidence is insufficient to support his conspiracy and marijuana possession convictions and appellant Salares contends that the evidence is insufficient to support his conspiracy conviction. Appellant Salares also challenges the trial court's refusal to grant his motion for severance. We agree that the evidence was insufficient to support the convictions of Glasgow with respect to his convictions of conspiracy and possession of marijuana. We agree also that the evidence was insufficient to support the marijuana conspiracy conviction of Salares. Accordingly, we reverse in part. We address the Fourth Amendment issues as they relate to appellant Glasgow's conviction for possession of cocaine and conclude that the conviction must stand. Because of our disposition of the sufficiency question raised by appellant Salares, we do not address his severance argument.

## FACTS

The events leading up to the convictions of appellants in this case began in the early morning hours of September 28, 1978, when a deputy of the Hendry County, Florida, Sheriff's Department observed a plane landing at the county airport. Once the plane was on the ground, the deputy saw a man in the plane join another man in a nearby phone booth. Both men disappeared before they could be identified. The plane was later discovered to contain 15 bales of marijuana. The plane bore the identification number N237WT on its tail.

Five days later, on October 3, 1978, W. C. Echols, who operates a one-man garage, responded to a call about a disabled van from appellant Larry Salares. Salares told Echols that the van had quit running and that he wanted Echols to tow it in and fix it. Although Echols told Salares that he might be able to fix the van on the road, Salares insisted that he tow it in to his shop. Eventually Salares drove it to Echols' shop and turned the keys over to him. When appellant Salares left the van, he told Echols it was a 1976 model. Salares told Echols that the van "would get hot and quit running" (Transcript of Motion to Suppress Hearing of March 22, 1979, Record on Appeal, Vol. II at 56) and that he thought it had "electrical ignition trouble" (*Id.* at 57). Echols asked Salares his name, but Salares did not give his name and only said that he would return for the van the next day.

Echols began working on the van the next morning. He determined that the van was a 1978 model. He noticed that the van was littered with whiskey and beer bottles, and he detected a "sweetish odor" he didn't recognize. (Transcript of Motion to Suppress Hearing of March 22, 1979, Record on Appeal, Vol. II at 65). He observed that the van had auxiliary fuel tanks and that it had been repainted. A solid plywood partition separated the front "cab" area of the van from the rear. There were no windows in the rear of the van and the rear doors were closed. Echols determined that the

---

1. Marvin W. Glasgow, Sr. was indicted along with appellants for conspiracy to possess marijuana with intent to distribute it, possession of marijuana with intent to distribute it and possession of cocaine with intent to distribute it.

The district court ordered his trial severed from that of the appellants. Marvin W. Glasgow, Sr. is now deceased and is not involved in this appeal.

engine coil was causing the van's trouble. The coil was accessible between the two front seats, and Echols did not need to and did not enter the rear of the vehicle.

After a visitor to Echols' shop commented that the van had a peculiar odor and asked Echols whether it was a "dope hauling" van, Echols began to wonder whether the van might have been stolen. As a "safety precaution" (Transcript of Motion to Suppress Hearing of March 22, 1979, Record on Appeal, Vol. II at 78), he asked the visitor to send a deputy to check the van to see if it was a stolen vehicle.

On the afternoon of October 4, 1978, Deputy Quinn McMillan of the Walton County, Florida, Sheriff's Department arrived at Echols' shop. Echols asked McMillan to check the tag number of the van and told him that the driver of the van had not identified himself. McMillan took down the tag number, looked inside the front of the van, walked back to the police car, then returned a little later to the van and began looking in the cab. He then looked around inside on the floormat and in the glove compartment. He picked up some "stuff" on the floor Echols didn't recognize and put it in an envelope. Next, Officer McMillan took the keys out of the van and went to the back, opened the door and looked in the back for 15 to 20 minutes. There were several items in the rear of the van, including containers of aircraft fuel, aircraft seats, a 100-pound scale, and a television set. McMillan removed two briefcases, what appeared to be a radio-telephone communications system, a cardboard box with an aircraft log book, aerial maps of South America, and various papers from the rear of the van and took these items with him. He also removed less than an ounce of what he thought to be marijuana residue from the rear of the van. The log book was that of the aircraft identified as N237WT.

McMillan left but returned later that same night with Customs Patrol Officer Louis Patterson and Ralph Dyer, a Panama City policeman. They returned the items Officer McMillan had removed from the van. Officer Patterson learned that Customs in New Orleans, Louisiana, had information in its computer concerning the aircraft N237WT. He notified the Drug Enforcement Agency (DEA) and put two people on surveillance of Echols' shop, beginning at about 9 a. m. on October 5, 1978. That morning, appellant Salares arrived at Echols' garage to pick up the van. Agents followed the van to a residence at 3 Old Ferry Road, Shalimar, Florida. They did not see Salares there, but they saw the van backed up in the vicinity of the front door. About an hour later, appellant Marvin Glasgow was seen driving the van away from the Old Ferry Road house. Agents saw appellant Salares in a car following Glasgow. Meanwhile, surveillance of the 3 Old Ferry Road residence was initiated. Agents observed Glasgow drive the van to a Ford dealership. Agents continued to maintain full-time surveillance on the van. On the morning of October 6, 1978, surveilling agents saw appellant Glasgow pick up the van at the Ford dealership and drive it to the Radio Shack. While the van was at the Radio Shack, one of the agents looked inside the rear of the van and observed that the briefcases, boxes and other items seen by Officers Patterson, McMillan and Dyer were no longer there. Thereupon, Officer Patterson secured a search warrant for the residence at 3 Old Ferry Road. Officers executed the warrant in the late afternoon of October 6, 1978. During the course of the search, agents found a paper bag with $28,000 in it; eight bales of marijuana in the same bedroom with all the items that had been in the van while it was at Echols' shop, including the log book for the aircraft N237WT; personal papers bearing the name of Marvin Glasgow, Jr.;[2] photographs of appellants Salares and Glasgow as well as a photograph of aircraft N237WT, among other items.

---

**2.** Agent Kreppein testified that he found cancelled checks in the name of Marvin Glasgow, Jr. dating back to 1973, a college degree bearing the name of Marvin W. Glasgow, Jr. or III, job resumes completed in the name of Marvin

Glasgow, III, and letters addressed to Marvin W. Glasgow, Jr. or Marvin W. Glasgow, III. The letters were not addressed to the 3 Old Ferry Road address. These papers were not introduced into evidence by the government.

After the search of the Old Ferry Road residence had been in progress for some time, appellant Glasgow arrived in the van at the residence. He was removed from the van and frisked. A vial of a white powdery substance later determined to be cocaine was discovered on his person.

## SUFFICIENCY OF THE EVIDENCE

■ In a conspiracy case, it is the job of the government to prove by substantial evidence that there was an agreement between two or more persons to commit a crime, that each conspirator knew of, intended to join, and participated in the conspiracy. *United States v. Marx*, 635 F.2d 436 (5th Cir. 1981); *United States v. Malatesta*, 590 F.2d 1379 (5th Cir.), *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). The government need not prove any overt act under 21 U.S.C. § 846, the conspiracy statute here involved. *United States v. Marx, supra.* Each element of the crime of conspiracy must be proven beyond a reasonable doubt. *United States v. Arredondo-Morales*, 624 F.2d 681 (5th Cir. 1980). We set out guidelines for appellate review of the sufficiency of the evidence recently in *United States v. Marx, supra.* There we said:

> In reviewing the sufficiency of the evidence, we must view all the evidence, direct and circumstantial, in the light most favorable to the government, and must accept all reasonable inferences and credibility choices that tend to support the jury's verdict. (citations omitted) The standard of review is whether a jury could reasonably find that the evidence was inconsistent with every reasonable hypothesis of innocence or, put another

way, whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. (citations omitted) In a conspiracy case, the verdict must be sustained if, taking the evidence most favorable to the government, there is substantial evidence to support the conviction. *United States v. Arrendondo-Morales* [sic], 624 F.2d 681, 684 (5th Cir. 1980); *United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir.) (en banc), *cert. denied* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979).

635 F.2d 436, 438 (5th Cir. 1981).

### A. *Salares*

■ Appellant Salares challenges the sufficiency of the evidence to support his conviction for conspiracy to possess marijuana with intent to distribute it. We are not troubled by the question of the existence of a conspiracy. There is adequate evidence that two or more persons were involved in a conspiracy to possess marijuana with intent to distribute it.[3] Our concern focuses on the question of Salares' knowledge of the conspiracy.

The evidence against Salares viewed in the light most favorable to the government is as follows:

(1) Salares left a van at Echol's shop for repair. The van contained equipment and a log book later identified as that of an airplane found to contain 15 bales of marijuana.

(2) When Salares picked up the van, he drove it to the residence at 3 Old Ferry Road in Shalimar, Florida. The van was backed up to the front door of the house for approximately an hour.

---

**3.** We do not concern ourselves with the question whether the evidence indicated the existence of one conspiracy to possess marijuana with intent to distribute it involving the marijuana found on the airplane N237WT and another conspiracy involving the marijuana found in the Old Ferry Road house or a single continuing conspiracy encompassing both the marijuana found in the plane and the marijuana found in the house. Without determining the precise scope of the conspiracy, we believe that there is sufficient proof of the existence of an agreement between at least two people to possess marijuana with intent to distribute it. We can infer the intent to distribute from the large quantity of marijuana involved. *United States v. Johnson*, 469 F.2d 973 (5th Cir. 1972). We will assume, for purposes of our analysis, that the government proved the existence of a single continuing conspiracy involving the marijuana found in the plane and the marijuana found in the house although we do not so decide.

(3) Driving another vehicle, Salares then followed appellant Glasgow, who was driving the van, from 3 Old Ferry Road to a Ford dealership.

(4) A photograph of Salares and appellant Glasgow was found in the 3 Old Ferry Road residence when it was later searched.[4]

From this evidence, the government would have the jury and this court infer that Salares was a knowing and willing participant in the conspiracy. Specifically, the government would have us infer the following:

(1) That Salares was aware of the contents of the rear of the van and that he knew those items were connected with the N237WT, the airplane used in the conspiracy;

(2) Alternatively or additionally, that during the time the van was backed up to the 3 Old Ferry Road residence Salares necessarily became aware of the conspiracy because he helped to unload the van, entered the house, and became aware of the eight bales of marijuana which were later found in the front bedroom during the course of the October 6, 1978, search of the 3 Old Ferry Road residence.

 While it is certainly possible that Salares was aware of the connection between the items in the van and the airplane used in the conspiracy, and that he was present in the 3 Old Ferry Road house and became aware of the presence of marijuana in the house, we conclude that the jury must necessarily have entertained a reasonable doubt in this regard. *Compare United States v. Littrell,* 574 F.2d 828 (5th Cir. 1978), where we similarly held evidence insufficient to prove guilt beyond a reasonable doubt of conspiracy to possess a controlled substance with intent to distribute. In this case, the evidence against Salares is clearly susceptible to innocent interpretation. The following inferences of innocent activity can reasonably be drawn from Salares' behavior:

(1) That Salares was unaware of the contents of the rear of the van and/or of their connection to the plane involved in the conspiracy;

(2) That Salares never entered the 3 Old Ferry Road residence; and

(3) That even if he did enter the residence, he did not become aware of the conspiracy, either because he did not go into the same room where the marijuana was found or because the marijuana was not in the residence at the time Salares was present.

The government presented no evidence that would establish beyond a reasonable doubt that Salares was even aware of the contents of the rear of the van, much less of their connection to the conspiracy. On the contrary, the evidence showed that the rear of the van was blocked from the view of the driver, that there were no windows in the van, and that the doors of the van were closed. Similarly, the government failed to prove beyond a reasonable doubt that Salares was ever inside the 3 Old Ferry Road address. No one saw him enter; no one saw him leave. No one saw him holding items from the van as if to carry them into the house. The government produced no evidence of fingerprints which would have placed Salares in the house. The photograph of Salares found inside the residence is not sufficient to establish Salares' knowledge of the marijuana in the house.

Even if we could assume that the evidence shows that Salares was in the house, the government has failed to prove beyond a reasonable doubt that the eight bales of marijuana were also present in the house and that Salares was aware of their presence. The evidence shows that eight bales of marijuana were found during the search on October 6, 1978, in the same room with the items previously seen in the back of the van. If Salares had helped unload the items from the van directly into the bedroom and the marijuana was in that room at that time, then he would have become aware of it. But even if Salares had helped

---

4. The government never introduced the actual photograph, but Agent Kreppein, coordinator of the search of 3 Old Ferry Road, testified that one was found.

unload the van and even if he had entered the house with the items from the back of the van, he did not necessarily put them into the room with the marijuana. The record shows that the house had at least three bedrooms, a living room, a den area, a kitchen, and a hall. The items from the van could easily have been unloaded into a hallway, for example, and later put into the room with the marijuana by someone else. It is significant that the items in the van were not, by themselves, incriminating or calculated to arouse one's suspicion.

In addition, the evidence does not show beyond a reasonable doubt that the eight bales of marijuana were already present at the house at the time the unloading of the van presumably took place. From the time the van arrived at the house until the time of the search of the house, the house was under surveillance. However, the record indicates that there was tall shrubbery in front of the house so that one trying to see the entrance to the house would have to look through the entrance to the driveway. The record indicates further that cars were seen arriving at and leaving from the 3 Old Ferry Road address during the early morning hours, between 4 and 5 a. m. of October 6, 1978. These comings and goings thus took place after the van was apparently unloaded and before the search revealing the eight bales of marijuana occurred. The testimony of surveilling agents does not suggest that people were seen carrying bales of marijuana into the house during the predawn hours of October 6. On the other hand, that testimony does not exclude the possibility that the marijuana was taken into the house at that time.

While it is certainly possible that Salares was a knowing participant in the conspiracy to possess with intent to distribute marijuana, the government has simply failed to prove his knowing participation in the conspiracy by substantial evidence. We conclude that the jury could not have reasonably found that the evidence was inconsistent with every reasonable hypothesis of innocence; a reasonably-minded jury must necessarily have entertained a reasonable doubt of Salares' guilt. Accordingly, we must reverse the denial of his motion for judgment of acquittal and direct entry of judgment of acquittal for appellant Salares.

### B. *Glasgow*

#### 1. *Conspiracy*

Using the same principles of review, we next consider the sufficiency of the evidence to support the conviction of Marvin Glasgow, Jr. for conspiracy to possess marijuana with intent to distribute it. The evidence against Marvin Glasgow can be summarized as follows:

(1) Glasgow drove the van from the 3 Old Ferry Road residence to the Ford dealership on October 5, 1978.

(2) Glasgow picked the van up at the Ford dealership and drove it to the Radio Shack on October 6, 1978.

(3) Glasgow drove the van from the Radio Shack to the 3 Old Ferry Road residence in the late afternoon of October 6, 1978, whereupon he was removed from the van and frisked.

(4) Items bearing the name Marvin W. Glasgow, Jr., or Marvin W. Glasgow, III, were found inside the 3 Old Ferry Road residence. These included cancelled checks, resumes, a college diploma, and photographs of Marvin W. Glasgow, Jr.

The inferences the government would have us draw are the following:

(1) That Glasgow was inside the Old Ferry Road residence at the time the van was unloaded.

(2) That the eight bales of marijuana were also present in the Old Ferry Road residence at that time.

(3) That Glasgow was aware of the presence of the marijuana.

█ It is certainly plausible that Glasgow was involved in the conspiracy, but we are convinced that the government has failed to prove his knowing involvement beyond a reasonable doubt. The government offered no evidence that anyone saw Glasgow enter or leave the 3 Old Ferry Road address or that he was present in the house at the

same time that the eight bales of marijuana were there. Even if we infer that Glasgow was present in the house at the same time the marijuana was there, the government has offered no evidence that he was present in the room where the marijuana was located, nor any other evidence that he knew the marijuana was there. The only evidence suggesting some connection between Glasgow and the house, which was not also available with respect to Salares, was the fact that the above-mentioned personal items belonging to Glasgow were found in the house. The record does not indicate where the personal items were found. It does not reveal whether they were in an envelope or box that might reasonably have been left at someone else's (perhaps his father's) house, or, rather, whether they were found in dresser drawers and otherwise throughout the house in such manner as to suggest Glasgow lived there or spent considerable time there.

We conclude that the range of reasonable hypotheses includes the hypothesis that Glasgow left the personal items in another's house (*e. g.*, his father's), and that Glasgow had no intimate connection with the house which would establish beyond a reasonable doubt that he would know that marijuana was present in the bedroom. We conclude that the jury could not have reasonably found that the evidence was inconsistent with every reasonable hypothesis of innocence. Therefore, a reasonably-minded jury must necessarily have entertained a reasonable doubt of Glasgow's guilt. Accordingly, we must reverse the denial of his motion for judgment of acquittal and direct entry of judgment of acquittal of Glasgow with respect to his conviction on the marijuana conspiracy count.

### 2. *Possession of Marijuana*

■ There is no evidence in the record of actual possession of marijuana by appellant Glasgow. However, constructive pos-

session is sufficient to support a conviction. *United States v. Littrell*, 574 F.2d 828 (5th Cir. 1978). We said in *United States v. Salinas-Salinas*, 555 F.2d 470, 473 (5th Cir. 1977), "Constructive possession may be shown by ownership, dominion, or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." More recently, we said, speaking of 21 U.S.C. § 841(a)(1), "Constructive possession is the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." *United States v. Marx*, 635 F.2d 436, 440 (5th Cir. 1981). In this case, there is no evidence that Glasgow was aware of the marijuana in the plane or that he owned the plane or had dominion or control over the plane. Similarly, as indicated above, there is no evidence that Glasgow was aware of the presence of the marijuana in the 3 Old Ferry Road address and there is no evidence that he owned, rented, or exercised dominion or control over the residence. The government has failed to prove constructive possession. Glasgow's conviction for possession of marijuana must be reversed, and a judgment of acquittal must be entered on that count.

### FOURTH AMENDMENT VIOLATION

Although our disposition of the sufficiency question makes it unnecessary for us to address the Fourth Amendment issues which relate to the conspiracy and possession of marijuana counts, we must consider appellant Glasgow's allegation of a Fourth Amendment violation as it relates to his conviction for possession of cocaine. The only argument germane to appellant Glasgow's conviction for possession of cocaine is that the discovery of the cocaine on his person was the product of Officer McMillan's illegal search of the van, that is, the fruit of the poisonous tree.[5] Because the

---

5. The connection between the search of the van and the seizure of cocaine from appellant Glasgow is as follows: During their search of the van, officers discovered the log book to the N237WT, an aircraft which they subsequently

learned had been involved in the transportation of a large quantity of marijuana. The log book thus linked the van to an illegal drug scheme. Accordingly, officers established surveillance of the van which lead them to the 3 Old Ferry

cocaine was tainted evidence, it should have been suppressed, Glasgow argues, citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We reject Glasgow's Fourth Amendment claim.

The threshold inquiry in a Fourth Amendment challenge is whether the challenger had a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Appellant may seek to exclude evidence seized as a result of an unconstitutional search or seizure only if the challenged search or seizure violated his own Fourth Amendment rights.[6] 439 U.S. at 133–34, 140, 99 S.Ct. at 424–25, 428. In this case, only if appellant Glasgow had a legitimate expectation of privacy in the rear of the van may he seek to exclude evidence produced as a result of that search.

Glasgow, as the proponent of the motion to suppress, had the burden to establish that his own Fourth Amendment rights were violated by the challenged search. *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 423–24, 58 L.Ed.2d 387 (1978); *Accord Rawlings v. Kentucky,* 448 U.S. 98, 103–104, 100 S.Ct. 2556, 2560–61, 65 L.Ed.2d 633, 641 (1980); *United States v.*

*Molina-Garcia,* 634 F.2d 217 (5th Cir. 1981). We hold that appellant Glasgow has failed to meet this burden. The evidence shows that it was appellant Salares who left the van with Echols to be repaired and it was Salares who came to pick it up. During the time that the van was at Echols' shop, the allegedly illegal search took place. The evidence also shows that the day after the search occurred appellant Glasgow drove the van from the Old Ferry Road residence to the Ford dealership. The next day he again drove the van, this time to the Radio Shack and later from the Radio Shack to the Old Ferry Road residence. These facts are simply not sufficient to demonstrate that Glasgow had the requisite legitimate expectation of privacy in the van to allow him to challenge the search. Glasgow offered no evidence showing who owned the van. He made no showing that he had property rights, either by lawful possession or by control with the right to exclude, which would indicate that he had a legitimate expectation of privacy in the rear of the van. *See Rakas v. Illinois, supra,* 439 U.S. 143 at n.12, 99 S.Ct. at 430. Nor did he show that he had a legitimate expectation of privacy in the rear of the van by virtue of "understandings that are recognized and permitted by society." 439 U.S. 128 at 143,

Road residence. Their surveillance then allowed them to observe appellant Glasgow driving the van to the Ford dealership and later to discover that the contents of the van had probably been placed in the residence. They then secured a warrant to search the house. After their search had revealed 8 bales of marijuana, appellant Glasgow arrived at the house whereupon he was frisked and the cocaine was found.

6. Appellants Glasgow and Salares were both charged with conspiracy to possess marijuana with intent to distribute it. Because we have overturned appellant Salares' conspiracy conviction for insufficiency of the evidence, we have not addressed Salares' claim that the search of the van violated his Fourth Amendment rights. We do not address Salares' claim that his Fourth Amendment rights were violated in the context of appellant Glasgow's Fourth Amendment claim, either, because Glasgow may not rely upon any legitimate expectation of privacy which Salares may have had in the rear of the van in order to advance his own Fourth Amendment claim. *See United States*

*v. DeLeon,* 641 F.2d 330 (5th Cir. 1981); *United States v. Hodges,* 606 F.2d 520 (5th Cir. 1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). In *DeLeon* we held that appellant could not assert an expectation of privacy in a cocaine-filled bag in the possession of his agents and coconspirators. We said, "A person has no right to assert the inadmissiblity of the fruits of an illegal search unless the challenged conduct invades his own legitimate expectation of privacy. *United States v. Payner,* 447 U.S. 727 [731], 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468, 474 (1980)." 641 F.2d at 337. In *Hodges* we rejected appellant's Fourth Amendment challenge to the search of the house of a coconspirator's father. We said, "Nor can appellant obtain standing vicariously through his relationship with the conspirator whose father's premises were searched. Even if that conspirator had an arguable possessory interest, appellant could not assert it simply by reason of that partnership. *Alderman v. United States,* 394 U.S. 165, 172, 89 S.Ct. 961 [965], 22 L.Ed.2d 176 (1969)." 606 F.2d at 523.

n.12, 99 S.Ct. at 430. Under these circumstances, we conclude that appellant Glasgow has not established his right to challenge the search which ultimately resulted in the discovery of cocaine on his person. Accordingly, we reject his argument that the cocaine must be suppressed and we affirm his conviction for possession of cocaine.

REVERSED IN PART AND AFFIRMED IN PART.