852 F.2d 1288
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert H. PETERSON, Defendant-Appellant.
 No. 87-6273.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Robert Peterson appeals from his conviction for possession with intent to distribute marijuana and for manufacture of marijuana, questioning whether the evidence presented at the jury trial was sufficient to support the conviction. The defendant argues that the government presented no evidence that he planted, cultivated, or had any knowledge of the approximately 13,320 marijuana plants located on his farm. There was evidence that Peterson owned the field where the marijuana was located, and he admitted to planting corn in the field where the substantial quantity of marijuana was discovered growing. There was also evidence that this field had been treated differently from Peterson's other cornfields, and that the most practical and evident means of access to the field went directly past defendant's residence. We agree with the conclusion of the district court that, viewing the evidence in a light most favorable to the government, it was sufficient to support Peterson's conviction.
 
 
 2
 On July 3, 1986, the Kentucky State Police received an anonymous telephone tip that marijuana was growing on Peterson's farm. An officer from the narcotics section of the state police flew over the area in a helicopter and spotted marijuana plants growing in the center of a cornfield. Other officers came onto the defendant's property, located the marijuana, located defendant Peterson, informed him of his rights, and questioned him regarding the marijuana. Peterson told them that he had no knowledge of the marijuana, and that although he had planted corn in the field where the marijuana plants were growing, he had not returned to that field since planting the corn in May.[1] Before destroying the marijuana plants, an officer counted approximately 13,320 plants growing in the center of the field surrounded by corn. An officer also rode around the field on a tractor with Peterson in order to determine whether there were any entrances to the field other than the road that went past Peterson's residence and barn, but did not find another entrance. Later, however, another rough means of entrance was located.
 
 
 3
 Peterson was indicted for conspiracy to unlawfully possess with intent to distribute marijuana, for unlawful possession with intent to distribute marijuana, and for unlawfully producing 13,320 marijuana plants, more or less. The conspiracy count was dismissed on motion by the government. At the conclusion of the jury trial and after the government rested, defense counsel moved for a dismissal based upon insufficiency of the evidence, and the district court denied both these motions. The jury convicted Peterson on both remaining counts.
 
 
 4
 Following the jury's guilty verdict, defendant moved for a judgment of acquittal. The court denied this motion also, reasoning:
 
 
 5
 The marijuana was found in a corn field on the farm owned, occupied and operated by defendant. It was located in a corn field either 1/8 or 1/4 mile from defendant's residence. The sheer number of the plants involved could--and did--lead a reasonable trier of fact to reject the argument that the owner of the land did not know of the presence of the plants.
 
 
 6
 Although defendant's counsel made what the Court felt was a powerful argument that a landowner would not risk forfeiture of his farm by growing marijuana, an equally strong argument could be made that a grower of marijuana would hestitate to risk that a crop of this magnitude might be discovered and destroyed if he planted it on another's farm.
 
 
 7
 The Court concludes that there was sufficient evidence upon which a rational trier of fact could conclude that defendant was guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).
 
 
 8
 We find no error in the court's conclusion.
 
 
 9
 "A jury conviction must be sustained if there is substantial evidence on the record to support it." United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). We must view all the evidence in the light most favorable to the government and must resolve in the government's favor all inferences that reasonably may be drawn from the evidence and all conflicts in the testimony where defendant asserts insufficiency of the proof. If the record, when viewed in this light, contains sufficient competent evidence to allow a rational juror to conclude that each element of the charged offense has been established beyond a reasonable doubt, then we must affirm the conviction. This rule applies whether the evidence on which the government relies is direct or wholly circumstantial. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). Furthermore, "[i]t is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt" in order for a reviewing court to find a conviction supported by sufficient evidence. Id.
 
 
 10
 We are persuaded, after reviewing the record, that a rational juror could have concluded that Peterson was guilty beyond a reasonable doubt of the offenses charged. It is undisputed that Peterson owned the field in which the marijuana was found growing. Although mere possession of a piece of land may not be sufficient to establish a knowing possession of all items found on that land, cf. United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.) (discussing possession of house and its contents), cert. denied, 414 U.S. 866 (1973), the government introduced other evidence that, viewed in the light most favorable to the government, could lead a rational juror to conclude that Peterson should have known of the presence of the plants on his land. Such proof is sufficient to support a conviction for possession. See United States v. Glasgow, 658 F.2d 1036, 1043 (5th Cir.1981).
 
 
 11
 Although the field where the plants were growing was surrounded by woods (except where the road entered the field), it was less than a quarter of a mile from Peterson's house, and the most practical means of access to the field was the road that ran directly past Peterson's house and barn.[2] The part of the field where the marijuana plants were growing appeared to have been worked recently because the dirt around the plants was loose. The marijuana field also appeared, both to a state policeman and an agronomist from the University of Kentucky, to have been treated differently from the other cornfields on Peterson's property. The agronomist testified that the other cornfields on the farm appeared to have been planted earlier because the corn was further along. He also stated that the other fields had the appearance of having been cultivated (as opposed to sprayed) for weed control. By contrast, in the marijuana field, only the outside rows of corn looked as if they perhaps had been cultivated once very early. Kentucky Officer Boone also testified regarding the difference between the cornfield where the marijuana was growing and Peterson's other cornfields. He stated that the other cornfields looked clean[3] of weeds, while the marijuana field contained more weeds and other greenery. The agronomist also testified that it would be unusual for a farmer to plant a cornfield and never go back to it, as Peterson told police he had done with regard to the field where the marijuana was found growing.
 
 
 12
 Viewing this evidence in the light most favorable to the government and drawing all reasonable inferences from it in favor of the government, we are of the opinion that a jury rationally could have concluded beyond a reasonable doubt that Peterson at least knew of the presence of the marijuana on his property. The field contained approximately 13,320 plants valued at $1,000 each at maturity, with a street value of several million dollars. A jury may infer the intent to distribute from circumstantial evidence of possession of large quantities of drugs or an estimated street value of the drugs. United States v. Faymore, 736 F.2d 328, 333 (6th Cir.), cert. denied, 469 U.S. 868 (1984).
 
 
 13
 We AFFIRM the convictions accordingly.
 
 
 
 [1]
 One officer did testify that Peterson said that he had plowed the cornfield on one occasion but did not remember exactly when he had done so
 
 
 [2]
 The defense introduced the testimony of a private investigator who presented photographs, taken fifteen months after the discovery of the marijuana plants at issue here, that showed an old county road that ran within 150 feet of the cornfield. The pictures also showed a trail that went from the county road, through a creek, and to the cornfield. There was also a fence between the old county road and the cornfield. The aerial pictures taken by the police on July 3, 1986, showed the existence of the old county road, but showed no trail. When detective Hancock rode a tractor around the marijuana cornfield on July 3, 1986, to look for any entrance to the field other than the road, he found none
 
 
 [3]
 Boone assumed the other cornfields had been sprayed for weeds, but the agronomist testified that soil samples showed that herbicides for weed control had not been used in any of Peterson's fields in 1986. A man who had worked on Peterson's farm in the spring of 1986, but who had not participated in the planting of the fields, testified that Peterson sprayed rather than cultivated his corn. Such conflicts in the testimony must be resolved in the government's favor for purposes of this sufficiency review