SEA SPORTS CENTER, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; UWE HARMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sea Sports Center, Inc. v. Commissioner
Docket Nos. 26671-88, 26811-88
United States Tax Court
T.C. Memo 1991-209; 1991 Tax Ct. Memo LEXIS 233; 61 T.C.M. (CCH) 2597; T.C.M. (RIA) 91209; May 14, 1991, Filed *233 Decisions will be entered for the respondent. James L. Chase and Seth E. Wright, for the petitioners. Linda J. Wise and Shuford A. Tucker, Jr., for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioner Sea Sports Center, Inc's (hereinafter Sea Sports) and petitioner Uwe Harms' (hereinafter petitioner) 1984 Federal income taxes as follows: [1]
Sea Sports Center, Inc. Docket No. 26671-88 Additions To Tax [2]
Section
Section
Section Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1984
$ 53,343
$ 26,672
50% of the
$ 13,336
interest due
on $ 53,343
Uwe Harms Docket No. 26811-88 Year
Deficiency
Section 6653(b)(1)
Additions To Tax Section 6653(b)(2)
Section  6661
1984
$ 50,206
$ 25,103
50% of the interest due on $ 50,206
$ 12,552
*234 The issues to be decided are: (1) Whether Sea Sports failed to report additional income in the amount of $ 160,557 on its corporate Federal income tax return for the taxable year 1984; (2) whether petitioner failed to report additional income in the amount of $ 108,740 on his Federal income tax return for the taxable year 1984; (3) whether Sea Sports is liable for additions to tax under section 6653(b)(1) and (2) for the taxable year 1984 because all or part of its underpayment was due to fraud; (4) whether petitioner is liable for additions to tax under section 6653(b)(1) and (2) for the taxable year 1984 because all or part of his underpayment was due to fraud; (5) whether Sea Sports is liable for the addition to tax under section 6661 for the taxable year 1984 because of a substantial understatement of income tax; and (6) whether petitioner is liable for the addition to tax under section 6661 for the taxable year 1984 because of a substantial understatement *235 of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner is a German citizen whose legal residence was in Ft. Walton Beach, Florida, for U.S. income tax purposes at the time of the filing of the petition for docket No. 26811-88. Petitioner executed his Federal income tax return for the taxable year 1984 on August 27, 1985. The executed return was mailed in an envelope postmarked August 28, 1985, and received in the Atlanta Service Center on August 30, 1985. Sea Sports is a Florida corporation having a business address in Ft. Walton Beach, Florida, at the time of the filing of the petition in docket No. 26671-88. Sea Sports filed its corporate income tax return for the calendar year 1984 by mailing the return to the Atlanta Service Center in an envelope postmarked September 16, 1985. Petitioner studied economics under Heinrich Hartwig Jacobi (hereinafter Mr. Jacobi) in Germany in 1973 and 1974. Mr. Jacobi is a German citizen. He has taught economics since 1969. He owns 50 percent of two financially oriented businesses and *236 also manages investments for others. During 1984, Mr. Jacobi was in the United States from July 24 through August 14. Mr. Jacobi admitted that he never brought more than $ 10,000 cash into the United States on any of his visits. On January 1, 1981, petitioner purchased a leasehold interest in, and all fixtures and equipment related to, a waterslide and waterslide recreational complex (the Park). Petitioner purchased the leasehold interest and fixtures of the Park for $ 1,000,000 and his assumption of two outstanding debts of the seller. Petitioner paid $ 125,000 down and gave the sellers a mortgage deed to secure the remaining $ 875,000 of the purchase price. Mr. Jacobi loaned $ 69,000 of the down payment to petitioner. Mr. Jacobi paid the $ 69,000, by check, to the sellers directly. Mr. Jacobi's decision to loan petitioner a part of the down payment was based upon his earlier visit to the Park when it was in full operation and upon his examination of the books of the then owner of the lease on the Park. Sea Sports was incorporated in 1981. On April 28, 1981, Sea Sports and petitioner entered into a purchase contract under which Sea Sports purchased the leasehold and fixtures *237 and equipment acquired by petitioner from the former holders of the leasehold. Sea Sports paid the purchase price to petitioner by assuming the debts that petitioner assumed from the former owners in his acquisition, by assuming petitioner's purchase money debt to the former owners, and by giving a demand note for $ 157,100. Petitioner is the president and sole shareholder of Sea Sports. Sea Sports generally operated the Park from March through September of each year, including the taxable year at issue. The busiest period for the Park was May through mid-August. Some of the shops and activities in the Park were rented to and operated by third parties. These rents were paid to Sea Sports by check. Payments from customers for the facilities conducted by Sea Sports were primarily made by cash. However, some payments were made by traveler's checks, charge cards, and personal checks. In 1984, Karen Beale (Mrs. Beale), then known as Karen Thompson, was the secretary-treasurer of Sea Sports. During the taxable year in question, Mrs. Beale collected the cash from the Park's cashiers, completed the deposit slips, and made deposits for Sea Sports. If cash receipts exceeded $ 10,000, *238 Mrs. Beale would not deposit the entire amount in order to avoid completing a cash transaction report (CTR), as required by 31 U.S.C. section 5313(a) (1982). Mrs. Beale was approximately 19 or 20 years old in 1984. During respondent's examination of the 1984 returns for Sea Sports and petitioner, petitioner refused to cooperate with the revenue agent. Further, petitioner did not provide adequate books and records as requested by the agent. However, the revenue agent was able to secure bank records from Sunshine Bank in Ft. Walton by use of a summons. Based on this information, the revenue agent recomputed Sea Sports' and petitioner's 1984 income using the bank deposits method. Account 51072826 at Sunshine Bank was maintained in the name of Sea Sports. Deposits in the total amount of $ 178,119 were made to this account in 1984. There were no deposits of return items, transfers of funds from other accounts, loans, or other nontaxable income to this account. Account 1033067 at Sunshine Bank was held in the name of Sea Sports. Total deposits, nontaxable deposits, and net taxable deposits to this account were as follows in 1984: Total deposits
$ 554,992 Less nontaxable deposits: Loans
( 10,000)
Wire transfers
( 59,995)
Transfers from
account 51072826
(140,395)
Net taxable deposits
$ 344,602 *239 Included in the $ 59,995 wire transfer amount was a $ 1,400 deposit made on July 9, 1984. Consequently, the $ 1,400 was not included in respondent's determination of taxable income deposited into this account. Account 1212992 at Sunshine Bank was maintained in petitioner's name. Deposits to this account during 1984 consisted of the following: Loan Proceeds
$  5,000.00
Salary payments to petitioner
10,664.00
Transfers
21,377.00
Check from Mark Crowley to petitioner
1,500.00
Interest net of withholding: Total Interest
$ 858 Withholding
(147)
$    711.00
Total Deposits
$ 39,252.00
Loan proceeds, transfers, salary checks deposited, and interest were eliminated from taxable deposits to account 1212992 in respondent's deficiency determination. Consequently, the only deposit to this account determined to be income of Sea Sports is the $ 1,500 check, payable to petitioner, from Mark Crowley. Account 1212075 was maintained at Sunshine Bank in the name of Mr. Jacobi (the Jacobi account). Only Mr. Jacobi and Ingrid Schaefer had signatory authority on this account. The following cash deposits totalling $ 103,394.61 were made to the Jacobi *240 account: Date of Deposit
Amount
6/25/84
$ 9,980.00
6/26/84
9,930.00
6/27/84
50.00
7/09/84
9,980.00
7/10/84
9,980.00
7/27/84
7,360.00
7/27/84
9,980.00
8/07/84
9,980.00
8/13/84
9,995.00
8/14/84
9,995.00
8/15/84
10.00
8/27/84
9,950.00
8/28/84
5,204.61
9/04/88
1,000.00
A cashier's check for $ 3,845.39 payable to Karen Thompson, now Karen Beale, was purchased by cash from Barnett Bank and was deposited to account 1212075 on August 28, 1984. As described above, a cash deposit was made to the Jacobi account in the amount of $ 5,204.61 on that same date, for a total deposit that day of $ 9,050. The above listed cash deposits were made from currency in the possession of petitioner and kept in a paper bag in his camper. All the cash deposits in the Jacobi account were made between June 25, 1984, and September 4, 1984, a 10-week period within the peak business period for Sea Sports. A notice of deficiency was mailed to petitioner on August 12, 1988, determining a deficiency in his 1984 income tax, additions to tax for fraud, and the addition to tax for substantially understating the income tax for 1984. A notice of deficiency was mailed to Sea Sports *241 on September 13, 1988, determining a deficiency in its 1984 income tax, additions to tax for fraud, and the addition of tax for substantially understating the income tax for 1984. OPINION We must resolve and adjudicate whether respondent's determinations of deficiencies and additions to tax, including additions to tax for fraud, against petitioner and Sea Sports are erroneous, as petitioner and Sea Sports assert. In this respect, we believe it is significant for us to commence our opinion by addressing the credibility of the principal witnesses of petitioner and Sea Sports. During trial, we found Mr. Jacobi to be evasive, unpersuasive, and wholly unreliable. His testimony regarding the deposits into account number 1212075 was implausible and unbelievable at best. Further, respondent has demonstrated that the facts in this case contradict Mr. Jacobi's testimony. Therefore, we afford Mr. Jacobi's testimony very little weight. Further, we found Mrs. Beale's testimony concerning the cashier's check in the amount of $ 3,845.39 to be contrived and unconvincing. To that extent, we afforded her testimony little weight. In the same regard, we found petitioner's testimony to be self-serving, *242 evasive, and unbelievable. Again, respondent has demonstrated to the Court that the facts surrounding this case contradict petitioner's account. We simply do not believe petitioner, and we afford his testimony very little weight. 1. The Underlying Deficiency
Petitioners make several arguments contesting their determined deficiencies. First, petitioners assert that respondent's recomputation of income includes sales taxes collected by Sea Sports and paid over to the State of Florida. Petitioners argue that the amounts collected and paid to the State as sales taxes are not properly includable in respondent's income recomputation. Second, petitioners argue that income deposited into the Jacobi account should not be included in respondent's income recomputation. Petitioners assert that the funds in the Jacobi account were Mr. Jacobi's, not Sea Sport's or petitioner's. Third, petitioners argue that Mrs. Beale used her own private funds when purchasing the $ 3,845.39 cashier's check. Petitioners contend that the amount of the cashier's check should not be included in respondent's income recomputation. Fourth, petitioners contest respondent's method of computing income. *243 In order to justify respondent's methods of income recomputation, petitioners argue that respondent must show that Sea Sports and petitioner maintained inaccurate and incomplete books and records. Fifth, petitioners assert that some of the funds deposited in the Jacobi account were received from outside nontaxable sources. These outside sources include proceeds from the sale of an automobile and proceeds transferred to Mr. Jacobi by a third party, not involved in these proceedings, for investment purposes. Finally, petitioners argue that respondent's notice of deficiency was arbitrary and excessive. Based upon this argument, petitioners assert that respondent should have to carry the burden of going forward. Respondent asserts that petitioners have failed to meet their burden of proof in establishing the right to a reduction in respondent's income recomputation for sales taxes collected and paid to the State. Similarly, respondent contends that petitioners have not brought forth sufficient evidence to support their argument that funds deposited into the Jacobi account were not income to petitioner and Sea Sports. Respondent also argues that petitioners have not brought forth *244 sufficient evidence to support their contention that various deposits to the accounts under examination came from outside, nontaxable sources. Finally, respondent contests the reliability of petitioner, Mr. Jacobi, and Mrs. Beale. We agree with respondent. Gross income includes all income from whatever source derived. Sec. 61; Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 99 L. Ed. 483, 75 S. Ct. 473 (1955). Respondent's deficiency determination is presumptively correct and the burden of proof is on petitioner to show that it is incorrect. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). However, if a taxpayer can establish that the notice of deficiency determination is arbitrary and excessive, then respondent will lose the presumption of correctness. Helvering v. Taylor, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935). Petitioner also bears the burden of proof to show that he is entitled to deductions greater than those allowed by respondent. Welch v. Helvering, supra; Rule 142(a). This burden of proof includes establishing both the right to and the amount of the deduction. Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 40 L. Ed. 2d 717, 94 S. Ct. 2129 (1974); *245 New Colonial Ice Co. v. Helvering, 292 U.S. 435, 78 L. Ed. 1348, 54 S. Ct. 788 (1934). We have recognized in the past the right of respondent to recompute income utilizing the bank deposits method. Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Even when the taxpayer's books and records support the taxpayer's return, it is proper to independently test the result utilizing indirect methods, including the bank deposits approach. Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). Petitioners failed to show that their taxable income, as determined by respondent, should be reduced by amounts collected as sales taxes, which were allegedly deposited and paid over to the State of Florida without Sea Sports taking a corresponding tax deduction. The evidence relied upon to show sales taxes were collected and deposited was not reliable. Petitioners failed to introduce any evidence to show that the sales taxes were paid to the State or to show that any such payments were made from funds included in respondent's computation of income. Petitioners surely had the opportunity to support their argument by *246 producing the checks, or other receipts, which Sea Sports used in remitting the collected sales tax to the State of Florida. Even if petitioners had produced such evidence, petitioners still would need to establish that these collected sales taxes were deposited into one, or several, of the various bank accounts under examination. Petitioners totally failed to substantiate their assertion that they collected sales taxes or paid them over to the State of Florida. Therefore, petitioners have failed to meet the requisite burden of proof needed to support their argument that sales taxes, if any, should be substracted from respondent's income recomputation. Petitioners' second argument that funds deposited into the Jacobi account should not be included in petitioner's or Sea Sports' income computation is not well taken. The facts are clear that petitioner had possession of these funds prior to their deposit into the Jacobi account. It is also clear that Mr. Jacobi did not bring the kind of funds deposited into the Jacobi account with him when he entered the United States, based upon his testimony at trial. Since the vast majority of deposits to the Jacobi account were made during *247 the peak season for the Park, it is reasonable to conclude that the deposits consisted of cash receipts from day-to-day operations of the Park. Petitioners' assertion that Sea Sports and petitioner are not responsible for any deposits to the Jacobi account because they do not have the authority to make withdrawals from the account is without merit. The facts demonstrate that petitioner had control and dominion of the funds deposited into the Jacobi account. As previously noted, petitioner maintained the funds deposited into the Jacobi account in a paper bag in his trailer. Further, the funds were deposited, at his direction, by his secretary into the Jacobi account. The facts also support respondent's determination that the funds deposited were cash receipts from the Park during the peak of its season. Consequently, we find that the deposits to the Jacobi account were properly included in respondent's deficiency determination based upon respondent's income recomputation. Petitioner makes much of the fact that he had no signatory power over the Jacobi account and argues that as he had no control over the funds deposited he, consequently, should not be taxable on those funds *248 transferred there by Sea Sports. But we are convinced that petitioner, Jacobi, and Beale were in pari delicto, acting in concert, and, as previously noted, we simply do not believe them. Petitioner bears the burden of proof that respondent's determinations are erroneous, and this aspect of the evidence does not convince us that petitioner lacked total control of these funds in concert with Jacobi. Petitioners' other arguments concerning alternate sources for the funds deposited into the various accounts are unconvincing. As stated earlier herein, we found petitioner's, Mr. Jacobi's, and Mrs. Beale's testimony to be self-serving, unbelievable, and contrary to the facts. Petitioner's and Mr. Jacobi's assertions that part of the deposits to the Jacobi account constituted the collection, by petitioner, of loans made by Mr. Jacobi to third parties is unbelievable. Further, petitioners could have substantiated these claims, if true, by calling the various parties to whom the loans were made to testify at trial. Petitioners did not do so. We find petitioner's and Mr. Jacobi's testimony to be incredible, contradictory, and insufficient to overcome petitioners' burden of proof with *249 regard to the deficiencies determined by respondent. Further, we do not believe Mrs. Beale's contention that the $ 3,845.39 cashier's check was purchased out of her own personal funds. Respondent correctly points out that the peculiarity of the amount of the check, when considering her stated purpose of use while traveling was contrary to her testimony. Further, the $ 3,845.39 check, when added together with the cash deposited to the Jacobi account on the same day ($ 5,204.61) totals $ 9,050, an amount closely resembling amounts deposited to the Jacobi account on numerous other occasions. Petitioners argue that in order for respondent to be able to utilize the deposits method of income recomputation, respondent must establish that petitioners' method of maintaining books and records was inadequate. However, petitioners can produce no authority to support their contention. We find that respondent had to resort to the indirect method of examining the relevant bank account transactions in order to recompute income because petitioners failed to maintain adequate books and records. Further, petitioners' argument is not well taken as petitioner failed to cooperate with the revenue *250 agent in the agent's quest to determine income. It is disingenuous for petitioners to now attempt to criticize respondent's method of income recomputation when petitioners refused to produce the needed documents that would have allowed respondent to more easily verify income. Finally, petitioners argue that the respective notices of deficiency issued to each of them were arbitrary and excessive. Therefore, petitioners argue that respondent's presumption of correctness is overcome. Petitioners produced no credible evidence to support their contention that the notices of deficiency at issue were anything but appropriate and correct. Absent such support, we will not look behind the notices of deficiency. Absent any showing of incorrectness by petitioners, we find the notices of deficiency against petitioner and Sea Sports to be correct. See Blum v. Commissioner, 59 T.C. 436, 440-441 (1972). We conclude that both petitioner and Sea Sports have failed to meet their burden of proof in refuting respondent's deficiency determination. Petitioners failed to bring forth any evidence to support their various contentions that the income deposited into the bank accounts *251 reviewed by respondent should have been excluded from respondent's income recomputation. Therefore, we find that respondent's determined deficiencies in the amount of $ 50,206 for petitioner and in the amount of $ 53,343 for Sea Sports for the taxable year 1984 are correct. II. Additions to Tax for Fraud
Section 6653(b)(1) and (2) provide for an addition to tax if any part of a year's underpayment is due to fraud. The addition to tax is an amount equal to 50 percent of the amount of the underpayment and 50 percent of the amount of the interest due thereon. The burden of proving fraud by clear and convincing evidence is upon respondent. Sec. 7454(a); Rule 142(b); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner, 79 T.C. 888, 929-930 (1982); Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Corporate fraud necessarily depends upon the fraudulent intent of the corporate officers. American Lithofold Corp. v. Commissioner, 55 T.C. 904 (1971). Whether fraud *252 exists with respect to a particular tax year is a factual question which must be resolved by an examination of the entire record. Since fraud can seldom be established by direct proof, the requisite intent may be inferred from any conduct, the likely effect of which would be to conceal, mislead, or otherwise prevent the collection of taxes that petitioner knew or believed he owed. Spies v. United States, 317 U.S. 492, 499, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Professional Services v. Commissioner, 79 T.C. at 930. Respondent need not prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of it is attributable to fraud. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). Respondent has clearly and convincingly proven the existence of underpayments in both Sea Sports' and petitioner's 1984 returns. We must now determine, for each of them individually, if any of the underpayments resulted from fraud. We must determine whether Sea Sports and petitioner each voluntarily and intentionally evaded a tax which they knew they were *253 obligated to pay. The underpayment must have resulted from something more that their honest mistake as to the transfers involved and their failure to report income. Many facts exist in this case that clearly and convincingly establish that petitioner, as an officer of Sea Sports, as well as in his individual capacity, blatantly and intentionally endeavored to conceal, mislead, and otherwise prevent the collection of taxes knowingly owed by them. Examining all of the facts as a whole, respondent has proved that Sea Sports and petitioner acted fraudulently. The amounts of the deposits made into the Jacobi account are indicative of an intent to conceal the true nature of the deposits. We have already found that the deposits in question to the Jacobi account belonged to Sea Sports and petitioner. Mrs. Beale's method of depositing just under $ 10,000 on any given day strongly suggests that she was intentionally evading the requirements of 31 U.S.C. sections 5311 and 5313(a) et seq. (1982) wherein all cash transactions in excess of $ 10,000 must be reported to the Government. While her deposits of just under $ 10,000 each day did not break the letter of the law, they are strongly *254 suggestive of Sea Sports' intent to conceal the true nature of the cash deposits by not having to report them. Petitioners' and Mrs. Beale's weak endeavor to attribute this evasive tactic to the employees of the various banks involved simply does not hold water, and their testimony to this effect is totally self-serving. Further, Sea Sports and petitioner failed to maintain adequate books and records for the Park. The books and records were in such disarray that respondent had to reconstruct petitioners' income utilizing alternate methods. The failure to maintain accurate and complete books and records has long been recognized as a strong indicia of fraud. Holland v. United States, 348 U.S. 121, 99 L. Ed. 150, 75 S. Ct. 127 (1954). Next, petitioner took in over $ 100,000 in cash receipts from June through September of 1984 alone. Petitioner kept these receipts in a paper bag in his camper, making periodic deposits in various bank accounts. The use of cash is another strong indicia of fraud as it makes it easier to conceal the taxable nature of the cash. See United States v. Daniels, 617 F.2d 146 (5th Cir. 1980). The unbelievable, self-serving, contradictory, and *255 implausible testimony of petitioner, Mrs. Beale, and Mr. Jacobi is another indication of fraud. We find that petitioner and his cohorts made up their conflicting testimony in the hopes of misleading this Court and in the hopes of evading a tax which petitioner knew was rightfully owing. Finally, petitioner engaged in a deliberate act to delay and hamper respondent's ability to compute Sea Sports' and petitioner's true income for 1984. Petitioner delayed and refused to provide records to respondent at almost every turn. This failure to cooperate is yet another strong indicia of fraud on behalf of petitioner, as an officer of Sea Sports, and individually as well. Otsuki v. Commissioner, supra.
Based upon the entire record, we find that petitioner, as an officer of Sea Sports, as well as in his individual capacity, knowingly and intentionally evaded taxes he knew were rightfully owing. Therefore, both Sea Sports and petitioner are subject to the section 6653(b)(1) and (2) additions to tax for fraud as determined by respondent. III. Substantial Understatement
Respondent determined that both Sea Sports and petitioner are subject to the addition to *256 tax under section 6661 for the taxable year 1984 because they substantially understated the proper amount of income taxes owing in that year. Petitioners rely on their earlier argument that they did not understate their income tax at all and that the deposits to the various accounts under examination came from outside nontaxable sources. Section 6661 provides a 25-percent addition to tax if there is a substantial understatement of income tax in the year at issue. In determining if an understatement is substantial, section 6661(b)(2)(B)(ii) provides for a reduction of the understatement where there is, or was, substantial authority for petitioner's treatment. Taking into account the above limitation, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown for the taxable year. Sec. 6661(b)(1)(A). In the case of a corporation, however, section 6661(b)(1)(B) sets forth that an understatement is substantial if it exceeds the greater of $ 10,000 or 10 percent of the tax required to be shown for the taxable year. Having already found that understatements of income tax exist for both Sea Sports and petitioner during the taxable *257 year 1984, we must now determine if these understatements are substantial. Sea Sports reported its income tax liability on its 1984 return as zero, when, in fact, the correct tax liability was $ 53,343. Petitioner reported his income tax liability on his 1984 return as $ 4,528, when, in fact, his correct liability was $ 54,734. Even after adjusting the bank deposits for the nontaxable sources allowed by respondent, Sea Sports' and petitioner's understatements of income tax in 1984 are substantial. Therefore, Sea Sports and petitioner are each subject to the addition to tax under section 6661 for the taxable year 1984. CONCLUSION After reviewing the entire record, we find that Sea Sports failed to report income on its 1984 corporate tax return resulting in the failure to pay tax that was properly due and owing. We further find that Sea Sports, through its officers, acted fraudulently with respect to its 1984 underpayments. Therefore, the additions to tax under section 6653(b)(1) and (2) are applicable. Finally, we find that Sea Sports' understatement of income tax in 1984 was substantial under section 6661. Therefore, the section 6661 addition to tax, as determined by respondent, *258 is applicable. We also find that petitioner failed to report on his 1984 personal income tax return all income paid to or otherwise received by him. We further find that petitioner acted fraudulently with respect to his 1984 underpayments. Therefore, the additions to tax under section 6653(b)(1) and (2) are applicable. Finally, we find that petitioner's understatement of income tax in 1984 was substantial under section 6661. Therefore, the section 6661 addition to tax, as determined by respondent, is applicable. We have examined petitioners' other arguments and find them contrary to the facts, wholly unpersuasive, and without merit. To reflect the foregoing, Decisions will be entered for the respondent. Footnotes
1. Uwe Harms and Sea Sports Center, Inc. shall together hereinafter be referred to as petitioners.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩